IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION


JAMES M. HARRINGTON,                    )
                                        )
              Plaintiff,                )
                                        )  3:08CV251
                                        )  MAY 22, 2009
      vs                                )
                                        )
CIBA VISION CORPORATION,                )
                                        )
              Defendant.                )
_____/

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE FRANK D. WHITNEY
UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF          GLEN A. CIPRIANI, ESQ.
                           The Harrington Practice
                           10130 Mallard Creek Road
                           Charlotte, NC 28262



FOR THE DEFENDANT          STEVEN D. MOORE, ESQ.
                           Kilpatrick Stockton LLP
                           1100 Peachtree Street
                           Atlanta, GA 30309


                           M. MILLER BAKER, ESQ.
                           McDermott Will & Emery LLP
                           600 Thirteenth Street, NW
                           Washington, DC 20005

APPEARANCES CONTINUED:


FOR THE INTERVENOR

                        GORDON A. JONES, ESQ.
                        US DOJ
                        601 D Street, NW
                        Washington, DC 20004




        Proceedings reported and transcript prepared by

                JOY KELLY, RPR, CRR
            U. S. Official Court Reporter
              Charlotte, North Carolina
                 704-350-7495

(Call to Order of the Court at 10:00 a.m. )

THE COURT:  Good morning.

We're here in Harrington v. CIBA Vision Corp, 3:08CV201.  We're here for round two of our Rule 12 motions. We're here after supplemental briefing on discrete issues. And I'll have to say this has been pretty exciting, an educational experience for me to be dealing with these issues.

I have had the pleasure as an AUSA to work in this arena, and to see the jurisprudence develop in this area is very exciting, and it's something that I think has caused me to focus with a lot more detail than I do in most cases.  In most cases, particularly civil cases, the issues are more as to just managing cases and moving cases forward so the parties can have their day in court.  But here we've got some really intellectually stimulating matters, and I'm just excited to be involved with them.

With that said, I'm going to let the defendants start their argument.  And we can start with 20 minutes a side like we said in the order.  Do you need that much?

MR. BAKER:  I don't think so, Your Honor.  It depends upon your questions, Your Honor.

I think the issues are in the brief.  I don't want to cover any new ground.  I don't want to cover ground you don't want to hear, so if Your Honor has any questions about

1    particular issues, as I --

2            THE COURT:  Okay.  Hold on a second.  Let me think

3    where would be the best place to start so we don't waste too

4    much time.

5            I'm less concerned about whether 12(b)(6) versus

6    the constitutional issues should go first but more concerned

7    with the Article II and Article III issues, if that gives

8    you any guidance.

9            MR. BAKER:  Okay.  Yes, Your Honor.

10           We've briefed the 12(b)(6) question.  Unless Your

11   Honor has any questions about that, I'll move on to the

12   jurisdictional question of Article III, and then I'll return

13   to Article II.

14           THE COURT:  That's perfect.

15           MR. BAKER:  Your Honor, I don't see a podium.  I

16   guess I should argue from -- is this appropriate, Your

17   Honor?

18           THE COURT:  If you're comfortable there -- or do

19   you want to have a podium?

20           MR. BAKER:  This is fine with me.

21           THE COURT:  Stand there.  There's a mike there

22   right in front of you.  That will pick you up.  The podium

23   doesn't have a mike.

24           MR. BAKER:  Your Honor, as to Article III in

25   standing, since we were in this court last there have been

1    two district court decisions that bear on the question of

2    standing.

3            With respect to standing, Judge Brinkema in the

4    Eastern District of Virginia found that there's an

5    assignment of the government's sovereign interests and that

6    is sufficient to establish standing in this case.

7            THE COURT:  Right.

8            MR. BAKER:  Section 292(b) case.  And she

9    disagreed with the observations of some academic

10   commentators that the government's sovereign interests, in

11   fact, are assignable.  There are scholarly commentators who

12   argue that at common law only proprietary interests are

13   assignable and personal rights are not assignable.  And

14   these commentators have argued that the government's

15   sovereign interests in fact are not assignable.  She

16   disagreed with that.  But we then go on to the next case

17   just decided Monday -- excuse me, a week ago, Thursday a

18   week ago.

19           THE COURT:  Judge Stein.

20           MR. BAKER:  That's right, from the Southern

21   District of New York.  And Judge Stein expressed

22   considerable doubt that in fact the government's interests

23   are assignable.

24           THE COURT:  That's one take on his footnote.

25   Another take on his footnote is that -- is that the

1    sovereign interest is assignable, but you will still have to

2    have an injury in fact to the sovereign first.

3         MR. BAKER:  His holding, his precise holding --

4    you're absolutely right, Your Honor.  He did not decide the

5    question of whether or not the government's sovereign

6    interests are assignable, but his holding is that the

7    relator in that case lacked Article III standing because

8    there was no injury alleged to the government or to the

9    relator himself.  It was simply a strict liability claim, if

10   you will --

11        THE COURT:  It was a negligence claim.  It was

12   "knew or should have known" was the actual language of the

13   complaint, and "should have known" is a negligence standard.

14        MR. BAKER:  That's correct.  And there was no

15   injury to the public at large from the alleged mismark. We

16   have the same thing, Your Honor.  There's no alleged injury

17   to the government.  There's no alleged injury to the --

18        THE COURT:  But it's not injury to the government.

19   It's the element of deception to the public.

20        MR. BAKER:  There's no allegation, there's

21   certainly no factual allegation that the public in any way

22   has relied upon these markings in a way that has been

23   injurious to the public.  We simply have in effect an

24   allegation of strict liability; it's been mismarked, and

25   therefore the mismarking was with the intent to deceive.

1    That's a conclusory allegation.

2         THE COURT:  Well, how much -- how much more do you

3    need?  If the government were to bring a criminal

4    indictment, it would only have to say "intent to deceive" in

5    there.

6         MR. BAKER:  The government would have to allege

7    facts.

8         THE COURT:  No, not in the Bill of Indictment.

9    Maybe I'm going too far to step into the criminal realm.

10   But just using the phrase, "intent to deceive," tracking the

11   elements is sufficient for a criminal fraud charge -- well,

12   a 292(a) or a criminal charge tracking the element.  I do

13   agree in the civil context you have to have a little bit

14   more, but --

15        MR. BAKER:  We have more elucidation of that very

16   principle.  This very week on Monday the Supreme Court ruled

17   in the *Ashcroft* case extending Plumly's standard for

18   pleading.

19        THE COURT:  Yeah, it did.

20        MR. BAKER:  From antitrust across the board.

21        THE COURT:  But isn't that still abuse of

22   discretion?  It's not a de novo thing.  The district court

23   can throw out a case on the pleadings, but it could also

24   allow the parties to amend the pleadings and move forward.

25        MR. BAKER:  I believe, Your Honor, you're

1  correct -- well, the district court would be required either

2  to dismiss a pleading that is factually insufficient, or the

3  district court could granted -- would have the discretion

4  probably -- probably to grant leave to replead.

5          But nevertheless, this pleading is facially

6  insufficient under that standard because all we have here is

7  an allegation of mismarking, that the public has been

8  injured.  There's no factual substantiation of any reliance

9  on the part of the public as to this alleged --

10          THE COURT:  Where is reliance an element?  I mean,

11  we're dealing with the elements of the -- in essence,

12  whether you want to call it a criminal statute or call it a

13  civil statute, we're dealing with the elements; and is

14  reliance an element?

15          MR. BAKER:  But in order to have injury.  In order

16  to have injury there has to be reliance.

17          THE COURT:  No.  Where?  I mean, you just have to

18  intend to deceive the public and that's enough.  I don't

19  think -- where do you find that the elements require

20  reliance?

21          MR. BAKER:  Reliance is an element of certainly in

22  any fraud case, Your Honor --

23          THE COURT:  Well, that might be.  That might be

24  but that's not what we have here, right?  Are do we -- I

25  mean we don't -- don't -- I mean the criminal charge and the

1    civil charge you have to have specifically -- certainly in
2    the criminal charge you've just got to have the elements of
3    292(a), right?  Are you saying to get a 292(b), civil
4    relief, you get to add an element of reliance?
5         MR. BAKER:  Your Honor, I would suggest that there
6    is an element of reliance because in order to have injury to
7    the public, as Judge Stein indicated in his decision, in
8    order --
9         THE COURT:  I'm not sure where he did.  Show me in
10   his decision -- I have it right here -- where it says you
11   have to have reliance?  I thought he said you have to have
12   actual injury --
13        MR. BAKER:  He does not say.  This is my inference
14   from that, from his observation.  That a misrepresentation
15   in the absence of reliance creates no injury.
16        THE COURT:  Well, unless Congress says there has
17   been, and Congress defines what an injury is.  I mean, under
18   common law, under fraud, you're right, you've got to have
19   reliance.  But here we're not dealing with common law fraud,
20   we're dealing with the elements of 292.
21        MR. BAKER:  There is not a strict liability
22   statute as Judge Stein observed in this case.
23        THE COURT:  Well, but it is if there's an intent
24   to deceive and that's proven.
25        MR. BAKER:  Your Honor, I would say for purposes

1    of civil liability, because it's not a strict liability

2    statute, there has to be some injury.  And the absence of

3    injury --

4          THE COURT:  Okay.  I understand what you're

5    saying.  Show me the case law out there anywhere that says

6    to get a 292(b) recovery, you have to add the additional

7    element of reliance; not just merely the intent to deceive

8    but a reliance on that deception.

9          MR. BAKER:  Your Honor, I would say it necessarily

10   goes to the question of injury.  There cannot be injury to

11   the public in the absence of reliance.

12         THE COURT:  So that means if it goes to injury,

13   that means you can't have a criminal prosecution without

14   reliance also.

15         MR. BAKER:  That may well be the case, Your Honor.

16   That may well be the case.

17         THE COURT:  All right.

18         MR. BAKER:  His decision rests on the absence of

19   injury.  There's no injury to anybody; the government, to

20   the public.

21         THE COURT:  I agree with you on that.  He's got --

22   I have to applaud you for your wonderful briefing.  Of

23   reading the portions of his opinion that you put into your

24   brief, and I was going, gosh, Judge Stein, I think is

25   missing the point here.  Then I went and read his opinion

1 and I went, no, I think Judge Stein's opinion is absolutely

2 right.

3         You have to -- for any party to have standing,

4 whether it's the United States or it's a relator, you still

5 have to plead the elements of 292, and they are not pled by

6 Mr. Stauffer in that decision; what's pled is "known or

7 should have known" versus "intent to deceive."  And,

8 therefore, you can't have an injury as defined by Congress.

9         So I think Judge Stein's absolutely correct.  I

10 don't think that's the facts we have here.

11         Now, you might want to argue lack of specificity

12 as to the pleading of intent to deceive here.

13         MR. BAKER:  All we have is a conclusory allegation

14 of intent to deceive.  There's no allegation of -- beyond

15 that, just a conclusory allegation of the elements of the

16 offense.  And the Supreme Court just reiterated on Monday in

17 the *Ashcroft* case that simply a reiteration of the elements

18 of an offense is insufficient for purposes of Rule 8 and the

19 appropriate pleading.

20         So we would submit that under Judge Stein's

21 decision that there was no injury pled here, and, therefore,

22 there is no injury, in fact, for purposes of Article III

23 standing.

24         But the second reason why there's no Article III

25 standing is our old familiar argument which I won't repeat,

1   bore you with --

2          THE COURT:  No.  I want to go back to it.

3          MR. BAKER:  Oh, I'm happy to, but I don't want to

4   test the Court's patience.

5          THE COURT:  The essence of your argument is that

6   the *Vermont Agency* -- *Vermont Agency* says that the only

7   thing that there's -- the United States Government or

8   Congress properly assigned FCA damages.

9          MR. BAKER:  Exactly right.

10         THE COURT:  FCA damages to a third party, to a

11  relator.  But you can't -- if it's nonproprietary damage,

12  you can't assign it.  Now, this is the question I have for

13  you:  What are the damages under the False Claims Act?

14         MR. BAKER:  An excellent question, Your Honor.

15         THE COURT:  Yeah.  It is a good footnote raised by

16  the government on this.

17         MR. BAKER:  I understand that.

18         Your Honor, the damages that are in the False

19  Claims Act are the -- multiple of the actual damages.

20         THE COURT:  Treble actuals, plus $5- to $10,000

21  per instance.

22         MR. BAKER:  Right.  So it's a combination of

23  actual actions and penalties.

24         THE COURT:  You knowledge the penalties.  In fact,

25  Congress used the phrase "civil penalty of $5- to $10,000."

1     MR. BAKER:  Your Honor, I acknowledge that.  And I

2  acknowledge -- but what the Supreme Court said in the *Marcus*

3  decision 50 years ago, 60 years ago --

4     THE COURT:  1943.

5     MR. BAKER:  Yes, Your Honor.

6     THE COURT:  And since then the False Claims Act

7  has been amended twice.

8     MR. BAKER:  I understand that, Your Honor.  But

9  essentially that this is a damages claim -- this is a

10  damages claim, and that it's a rough approximation of the

11  government's damages for purposes of a false --

12     THE COURT:  That's a great point you just raised.

13     You properly cite in your Article II argument,

14  take control, what I think is a very important case which

15  you just cited it as a "see also."  But I think it's a

16  really important case through all things, Article II and

17  Article III.  And I never can say it right, but it's the

18  *Bajakajian* case -- B-A-J-A -- hold on a second.  Let me

19  spell it for the court reporter so she doesn't get mad at me

20  later on.  B-A-J-A-K-A-J-I-A-N.  And you cite that in your

21  Article II argument distinguishing Judge Brinkema's

22  distinction between criminal and civil; and you say it's not

23  criminal or civil, the issue is whether it's punitive or

24  remedial.

25     MR. BAKER:  Absolutely, Your Honor.  Absolutely,

Your Honor.

Article II and Article III are flip sides of the same point.  The Supreme Court said that in *Lujan*.  And in fact, *Lujan* was a civil statute, and the question was whether or not there could be private enforcement of a civil statute.  And the Supreme Court said no, there is no standing -- Justice Scalia -- there's no standing because there's no injury to these people, and not only is this a question of Article III but it protects the President's power.  It's the most important duty.

THE COURT:  Right.  But in *Vermont Agency* the Supreme Court explained where it is permissible.  There is an actual injury to the United States -- a statutory actual injury by violation of the False Claims Act, and because there is money collected by the government, or could be collected, that money collection could be assigned just like any other.

MR. BAKER:  But, Your Honor, it's very important to note what the Court said was that the mere ability to get a portion of the government's penalty does not establish standing.  What establishes standing in *Vermont Agency* was the assignment of the damages claim.

THE COURT:  Exactly.

MR. BAKER:  That assignment.  Which is different -- we don't have a damages claim here.

1          THE COURT:  Well, but, see, that's the question I

2     have for you.

3          You cite the paragraph that specifically says you

4     can get FCA damages, and just the word is just "damages," it

5     doesn't say "nonpunitive damages," it doesn't say

6     "compensatory damages," it just says "FCA damages."

7          And a month ago you correctly summarized what are

8     the damages available under the False Claims Act:  A civil

9     penalty of $5- to $10,000 per instance and treble damages.

10    Actuals plus treble.  Now, aren't those punitive?

11          MR. BAKER:  But, Your Honor, it was the presence

12    of the proprietary damages that established the standing.

13          THE COURT:  Well, okay I give you.  I give you

14    that.  But let me ask you:  I agree with you, that that

15    might have opened the door.  But there's nothing in *Vermont*

16    *Agency* that says the only thing you can get are the actual

17    damages, you can't treble the damages or you can't get

18    penalties.

19          MR. BAKER:  Absolutely, Your Honor.

20          Let me give you an analogy.  That would be a

21    punitive damages case where a person has been -- or

22    antitrust violation -- punitive damages or the treble

23    damages in an antitrust are not -- do not compensate for

24    actual injury.  They go beyond that.  Nevertheless, the

25    plaintiff in a typical tort action or in an antitrust action

1    has standing to recover those punitive damages because they

2    are tied -- it's tied to that proprietary injury that he has

3    suffered.  Here we don't have the predicate.

4            THE COURT:  But where in the False Claims Act do

5    we have the relator having any proprietary damages

6    themselves?

7            MR. BAKER:  No.  It's the government's.

8            THE COURT:  No, I know it is the government's.

9            MR. BAKER:  Partial assignment of the government's

10   proprietary injury gives the relator the standing to assert

11   the entire cause of action.

12           THE COURT:  Okay.  But why is that not true here?

13           MR. BAKER:  There's no proprietary injury.

14           THE COURT:  How do you know?

15           MR. BAKER:  I know.

16           THE COURT:  Damage to society --

17           MR. BAKER:  But that's --

18           THE COURT:  -- is not -- Congress decides what is

19   damages to society.

20           MR. BAKER:  This goes back to -- you're absolutely

21   right -- the distinction between public and private rights.

22           This case involves public rights.  And I have a

23   couple articles, Supreme Court in the *Brasiana* (ph) case for

24   purposes of the jury trial right, goes into the distinction

25   between private rights --

1          THE COURT:  I'm just not following, though, how

2     you say that when the Supreme Court said in *Vermont Agency*

3     that you can get FCA damages, and clearly a big chunk of FCA

4     damages are penalties, and that's the actual word used in

5     the statute, you're saying that only because there's a

6     little -- because there's some actual damages in there

7     somewhere, that you can get all the sovereign damages as you

8     want to call them versus proprietary damages.

9          MR. BAKER:  Your Honor, it is -- it is -- there's

10     Article III standing.  And this is why in the FCA context

11     under my theory, our theory of the case, you still have

12     these Article II problems with a FCA relator because there's

13     still a portion of this that's purely the government's

14     interest and it's purely sovereign injury and it's civil law

15     enforcement because there are those penalties.

16          THE COURT:  I agree with what you're saying, but I

17     think it's a different issue.

18          MR. BAKER:  It is a different issue.

19          THE COURT:  You have to explain to me where a

20     private party cannot exercise prosecutorial authority or

21     Congress has said it and the Attorney General is not

22     opposing it.  But we'll get to that in a minute.

23          MR. BAKER:  But, Your Honor, there is no -- I have

24     challenged the government on two occasions -- maybe three,

25     I've lost count now -- I've challenged the government to

1    cite a single case in which the Supreme Court has upheld the

2    standing of a private person to assert injury based on

3    injury to the government's sovereign interests.

4         THE COURT:  But I think it works in reverse, or

5    you could argue it works in reverse.  The fact that there's

6    no distinction of cases out there, there's no cases that

7    distinguishes sovereign versus proprietary interest with

8    regard to a relator's claim and saying you can't get a share

9    of the sovereign interest, that that shows it's permitted.

10        MR. BAKER:  Your Honor, I think again standing is

11   different from the Article II question.  As long as there is

12   some proprietary interest of a government that has been

13   assigned, that establishes the Article III standing to

14   pursue the action.  I don't think standing, once you have

15   that, that foothold, that foundation, if you will, of

16   Article III standing, you don't then have to parse out the

17   remainder of the claims to see is there's standing to assert

18   the rest of those claims.

19        THE COURT:  You're saying that deception to

20   society, which is an element of 292, deception to society is

21   never a sovereign claim in the United States.

22        MR. BAKER:  No, it is.  It is absolutely -- in

23   fact, that is all it is.

24        THE COURT:  All right.  I'm sorry, I've got it

25   backwards.  It's my fault.  I did say it backwards.  You are

1  right.  You're saying it's never a proprietary claim.

2       MR. BAKER:  That's precisely right.

3       THE COURT:  Then who is supposed to be regulating

4  deception to society?  I mean, under just common law, a

5  third party that goes and reads the box and is confused by

6  the patent markings and buys the contact lens solution by

7  confusion of this patent marking, then they go and under

8  common law and file a single one-count claim for $20 or $10?

9       MR. BAKER:  Your Honor, the Supreme Court said in

10 *Lujan* that it's the Executive Branch's duty to vindicate the

11 public interest.  And that is exactly -- in the absence of

12 personal individual interest, it's a personal injury, it is

13 a matter of vindicating the public interest and that is what

14 this case is about.

15      But to answer your question of when can there

16 be -- who would have standing, there are two types of

17 individuals who have standing under 292.

18      The second paragraph of 292(a) says that when you

19 copy somebody's patent number, put it on your product, then

20 you are in violation of the statute.  That competitor who

21 would be wronged by your appropriation of their patent

22 number on your own product would have standing to bring an

23 action under 292(b).  Absolutely.

24      THE COURT:  Right.  And I don't think anyone

25 disagrees with you on that; but I think Judge Brinkema and

1    Judge Stein both say it's clear the competitor has standing,

2    but they both say it's not limited to the competitor having

3    standing.

4         MR. BAKER:  Beyond that, to the extent a person

5    can show personal injury, they might have standing if they

6    could show that they refrained from actually producing a

7    competing product based on the fact that they were misled --

8    I'm not conceding this point but there's a possibility of

9    this -- that such a person would have Article III standing

10   under 292(b).

11        That is, they refrained from actually creating the

12   product or doing something based in reliance upon this

13   representation the product is actually covered by at patent

14   mark.  So it's possible in that case there may be

15   Article III standing.

16        But we don't have that here.  There's no

17   indication that Mr. Harrington has refrained from producing

18   this contact lens solution based upon this fear he might be

19   sued in a patent infringement action.  That's simply not the

20   case here.

21        THE COURT:  Where either in statute or

22   expressly -- not kind of implicitly but expressly -- in any

23   Supreme Court or circuit opinion does it say those are the

24   only three, besides the United States, would have standing?

25        MR. BAKER:  Your Honor, it's a question of -- the

Supreme Court defined standing as real concrete injury in fact. So you have to identify the categories of persons who have real concrete injury in fact.

THE COURT: And you didn't name three that private parties, without -- that would have it. Now -- and you agree or disagree that the United States has concrete injury in fact?

MR. BAKER: The United States -- well, Your Honor, there's no -- under Judge Stein's analysis, there's no injury alleged at all.

THE COURT: Well, no, no, no. He's right on that. They didn't allege the elements of 292 so you don't have standing. But if the elements of 292 were properly alleged by the United States, is the United States actually injured or not?

MR. BAKER: Yes, Your Honor. The United States is injured and its sovereign -- it's injured in its sovereign capacity, as it is in any instance in which the government's loss have been violated, that's a violation of a public rights. And under *Lujan* the Executive Branch has the exclusive responsibility for vindicating those public rights.

THE COURT: Where in *Lujan* does it specifically say that is never assignable just under general principles of assignment?

1          MR. BAKER:  No, it certainly doesn't -- if that's

2     not said in *Lujan*, Your Honor, we rely on this --

3          THE COURT:  I understand your argument.

4          The problem I have with your argument is the

5     extension of the law.  And I mean you might be right, but

6     I'm the trial court.  I'm the minor leagues.  The major

7     leagues are where you really extend the law.

8          But you agree there's nothing explicit that says

9     what you're saying.  It's all really, with great detail

10    *Vermont Agency*, and narrowly viewing the word "damages" in

11    *Vermont Agency* really as, well, damages require -- you know

12    of all the punitive damages you want that require some

13    actual damages in there initially before assignment, and

14    that's not written in there.  You're just adding it in

15    saying that's what it means.

16         MR. BAKER:  That is correct, Your Honor.  This is

17    an inferential reading of *Vermont Agency*.  No court

18    expressly adopts this argument.  We're in this strange

19    setting of 292(b).

20         THE COURT:  Right.

21         MR. BAKER:  But we look at the common law of

22    what's assignable, and Professor Galls (ph) has this

23    remarkable article which I think is very instructive, what

24    are the rights in common law that are assignable?  And the

25    rights that are assignable at common law are proprietary

1  rights, tort claim, contract claim.

2  THE COURT: I was reading your cites to the

3  article, and it said that personal injury damages are not

4  assignable. I'm presuming that means pain and suffering,

5  because certainly medical costs of personal injury are

6  assignable.

7  MR. BAKER: That's an economic loss. Economic

8  losses are assignable.

9  THE COURT: All right. Why could a -- why

10  couldn't someone who suffers a personal injury under common

11  law assign their pain and suffering to a family member?

12  Well, what's the logic behind that?

13  MR. BAKER: Without being circular, Your Honor,

14  because it's personal -- a family member might succeed to

15  that.

16  THE COURT: Well, certainly if they are an heir.

17  But what if it's a cousin or something like that?

18  MR. BAKER: The logic of common law is that the

19  rights of individuals that are strictly personal are thought

20  not to be assignable, and ought to be enforced only by the

21  person who has actually sustained the actual injury as

22  opposed to economic losses which are rarely transferable.

23  THE COURT: Is that -- and I was trying to

24  understand the public policy behind that. Is that unless

25  that actual person is bringing the claim, that the

1    tortfeasor isn't on the hook for these pain and suffering

2    damages without that person being in the courtroom asserting

3    them?

4           MR. BAKER:  That's probably one of the rationales,

5    Your Honor.  This is imbedded in the common law, going back

6    hundreds of years.

7           THE COURT:  See, because I think the public policy

8    reasoning behind that can help us today, because that would

9    be a very different -- if that is the reason that you don't

10   want to make the tortfeasor be on the hook for pain and

11   suffering damages to a person who really never suffered any

12   pain and suffering, it's an assignee, that's different from

13   why we have qui tam actions.

14          The reason you have assignment of qui tam actions

15   is because Congress and the Executive Branch want there to

16   be more prosecutors out there; they want there to be out

17   there more enforcement.  They are not doing it because the

18   injured party, the U. S. Government, in its benevolence is

19   saying, "I'm passing my injury on to somebody else."  What

20   they are doing is we're trying to hire more private

21   prosecutors; we're paying them a commission.  So the public

22   policy basis is very different, if that is, in fact, the

23   public policy basis for non-assignment of personal injury.

24          MR. BAKER:  Your Honor, there's a case we cited to

25   you in which there was an assignment of a contract claim in

1    which the question was the statute of limitations and a

2    federal agent's -- the Court held, it was in

3    Judge Brinkema's court, Eastern District of Virginia, held

4    the assignment of a government -- of an agency's contract

5    claim did not carry with it the limitations period that the

6    government enjoyed.  I think because the limitations period

7    was unique to the government.  I think that's what we have

8    here.  We have a right that is unique to the government,

9    which is a public right.

10            THE COURT:  And I understand what you're saying

11   but isn't that all once again an explicit statutory

12   language?  Here's -- the statute of limitations for the

13   government is this; the statute of limitation for others is

14   this.

15            MR. BAKER:  The decision in question simply says

16   this is not -- under the common law tradition, this is not

17   assignable.

18            THE COURT:  Let's go to Article II.

19            MR. BAKER:  Yes, sir.

20            THE COURT:  And get back to the issue of do we

21   make the distinction between criminal and civil or make the

22   distinction between punitive or remedial.

23            MR. BAKER:  It's the latter, Your Honor.

24            THE COURT:  Now, if it is the latter, why does

25   punitive -- making something punitive bar a -- why does that

exclude the Executive Branch from still having control?

MR. BAKER:  Your Honor, punitive versus --

THE COURT:  I should say it the other way:  Why does the Executive Branch only have to have control if it's punitive?  That's what I guess I should be saying.

MR. BAKER:  Because as the Supreme Court has said over and over again, vindicating the public interest or public rights -- I think remedial versus punitive can also be characterized as public versus private.  It's the same distinction --

THE COURT:  Well, you can make that jump, but you've got to show me some case law that says that.  Because I have not seen that in a wealth of decisions in the distinction between punitive and remedial.

MR. BAKER:  All right, Your Honor.

THE COURT:  Well, because the False Claims Act itself, the vast majority of the damages there are what you call sovereign damages.  You admit the penalties and the trebling, and how are those, you know -- how are those private?  They are clearly public.  Right?

MR. BAKER:  And it's precisely why those public rights -- so a qui tam relator in a false claims action asserts both public rights and private rights.  He asserts the government's private rights, it's for proprietary injury, and he also asserts the government's public rights,

1    that is the government's civil enforcement seeking punitive

2    relief for violation of his loss.  And it's precisely

3    because of that --

4          THE COURT:  Okay.  But you are acknowledging he

5    does that.

6          MR. BAKER:  And it's that assertion of the

7    government's public sovereign interests, that portion of it,

8    that triggers the Article II problems under the False Claims

9    Act; which is why all these circuit courts have gone through

10   in detail to determine whether or not under False Claims Act

11   there's sufficient control.

12         THE COURT:  You're right.  That's exactly right.

13   They have.  And every single one has said there's control.

14         MR. BAKER:  They have to do that because in the

15   False Claims Act context, there is the government's

16   proprietary interest at stake as well as its public interest

17   at stake.

18         THE COURT:  Can you show me any one of those

19   decisions that actually starts the analysis saying, "We find

20   there's both public and private, or proprietary versus

21   sovereign interests here, and because, because there's some

22   sovereign or public interest here in the form of damages,

23   some of the damages are public or sovereign, that we now

24   have to go through the control mechanisms."  Versus just

25   saying that it's a private party acting on behalf of the

U. S. Government, and, therefore, we still have to make sure the government has control.

MR. BAKER: Your Honor, unfortunately the courts have not gone to that level of detail and just simply assume that because there's a public interest at stake that Article II has to apply. And that's why I would distinguish our False Claims Act case with, say, a typical contract case.

The government has a contract claim, was damage by a breach of contract, and the government wanted to assign that to me. I could assert that claim, pursue that claim without any Article II complications or implications because it's a purely private right of the government that I would be pursuing on assignment. But a relator --

THE COURT: But we're getting back to public policy issues here. It's like distinguishing the common law personal injury, public policy; the public policy that we have in this case where the government is trying to create private prosecutors.

In that case if its a regular breach of contract, there's a well-established system with administrative leave through the Board of Contract Appeals, and then there's specific jurisdiction, subject matter jurisdiction to the Claims Court, and then the federal circuit.

And so that's just set up because Congress and the

1    Executive Branch worked out that structure.

2         MR. BAKER:  That's where the government is a

3    defendant.  I'm talking about a case where the government is

4    a plaintiff, and the government has a permanent property

5    claim.

6         THE COURT:  Well, it depends.  But for the most

7    part, if the government is seeking money back from a

8    contractor because it overpaid them, it's going to be going

9    through the Competition Contracting Act procedures.  All

10   those things that are set up.  And but once again, that's a

11   breach of contract so you don't need a private prosecutor.

12        Under the False Claims Act, you're encouraging

13   private prosecutors for a couple reasons:  One, you want to

14   multiply your prosecutors.  You also want to -- the

15   whistle-blower, that's the key person, you want the

16   whistle-blower to come out from under the corporation they

17   are working for and say, "Hey, the corporation I'm working

18   for is cheating."  Or you want the investigative reporter to

19   do the same thing, "I have been investigating such-and-such

20   a government contractor and they are out there cheating."

21   So you're not only encouraging the private prosecutor, but

22   you're encouraging the whistle-blower.

23        You don't have that in contracts.

24        MR. BAKER:  That's right.  And the purpose of my

25   distinction is to say the government can assign away in my

view its proprietary interest without regard to Article II
implication.  It's only when the government assigns away its
sovereign powers, that is, enforcing public rights, that you
have the Article II implications.

That's why under the False Claims Act, because we
have a relator who is asserting not only the government's
proprietary injury, but its public injury, its sovereign
injury, that relator, that suit is subject to Article II
implications.

THE COURT:  I mean I understand what you're
saying, but I guess my problem is is that -- I view the
essence of your argument is it's all or nothing.  It's
either the government has all control or -- let me rephrase
that.

It is an all-or-nothing argument but it's --
either there's all proprietary damages, and a third party, a
relator can act on behalf of the government, or there's --
or there's any -- any penalty, any penalty of damages, and
then the third party is excluded.  And that's how I view
your argument.  And if there's any penalties, then they are
excluded.  And that's not what the FCA, *Vermont Agency* says
that's not true.

MR. BAKER:  We concede if there's sufficient
control under *Morrison v. Olson* it's appropriate.  Our test
here is under *Morrison v. Olson*.

THE COURT:  Okay.  It's not *Vermont Agency* and the allocation of damages between public and private or punitive or remedial, it is the level -- you're saying once you have any punitive, then you've got to kick in the control mechanisms.

MR. BAKER:  That's right, Your Honor.  That's exactly right.  That's right.

Once there's any -- once you get beyond proprietary, once there's some punitive aspect to it that is the government's punitive interest, sovereign interest, then Article II kicks in.  And that's why all of these circuits look at the False Claims Act, look at the Article II analysis and the test becomes *Morrison v. Olson*, is there sufficient control.

And in contrast to the False Claims Act where there's a specific, enumerated series of controls that allow the government to come in and control the relator's action, there's nothing in 292(b).

Unfortunately, it came up on the last round of briefs here, but both Mr. Harrington and we agree that under 292(b) the government can't do anything because the government is not a person.

THE COURT:  Let me go to *Morrison*, because that's a case that the government and the plaintiffs rely on.

And in *Morrison* the facts are slightly different.

1    We're talking about the Federal Election Commission, and

2    we're talking about the control being outside of the

3    Executive, but the control being kind of in the Judiciary.

4    It's a control issue that deals with the authorities of each

5    of the branches, but it's not kicking the authority of a

6    second branch to a private party, it's kicking -- the

7    Article II, I should say second branch -- but it's kicking

8    the authority, Executive, as the primary prosecutor to the

9    courts to supervise the independent counsel panel.

10    Their argument is that if there ever was a

11    delegation of an Executive Branch authority to another

12    entity, whether it's another branch or private party, it

13    said that is the broadest you could ever have.  You're

14    basically telling the Executive, "Guess what?  You really

15    aren't going to be supervising a prosecution anymore of some

16    of the highest officials in the U. S. Government.  It's

17    going to be really ultimately supervised by the courts."

18    And it said if you certainly can give that type of authority

19    to the courts over the Executive, then you certainly can

20    give this little bit of authority to a private party.

21    MR. BAKER:  Well, Your Honor, I would disagree at

22    two levels.  First, there's no distinction under the Take

23    Care Clause between civil and criminal enforcement.  None.

24    THE COURT:  Okay.  That I agree with you on.

25    Okay.

1         MR. BAKER:  The standard has to be the same.  You

2 can't say well -- Judge Brinkema got it absolutely wrong,

3 with all due respect.  She relied --

4         THE COURT:  I don't want to say she was wrong but

5 I will say I agree with you.

6         MR. BAKER:  She relied upon ipse dixit from the

7 Fifth Circuit, and the Fifth Circuit said they had no

8 authority for that proposition.  And the Supreme Court on

9 two occasions, in the context of civil law enforcement,

10 has -- both *Buckley* and *Lujan*.  In *Lujan* the Court said,

11 "Enforcement of laws is the Executive's most important

12 responsibility."  And this was in the context --

13         THE COURT:  I agree.  But what I'm saying -- and

14 you're saying it too -- if the enforcement of laws is the

15 most important responsibility of the Executive, then how can

16 you have an independent counsel?  Because I mean that is

17 criminal prosecution of potentially the President of the

18 United States.

19         MR. BAKER:  Your Honor, *Morrison* is still law; and

20 as long as there is sufficient control, *Morrison* may be the

21 law, regrettably, but it is the law -- it is the law, and as

22 long as there's sufficient control, the Article II concerns

23 are satisfied.

24         Here we have no -- so that's the test.

25         THE COURT:  The controls in *Morrison*, there are

some controls in *Morrison* that the Attorney General still
retains but they're very few and far between.

MR. BAKER:  Remove the special prosecutor for
cause.  The Attorney General -- the whole action could not
even be initiated until the Attorney General appointed a
special prosecutor.  In this case we have relators
freelancing.

THE COURT:  Wait a second.  The Attorney General I
thought recommended the special prosecutor, the independent
counsel panel, and that panel was all Article III judges.

MR. BAKER:  But the whole process had to be
initiated by the Attorney General.

Mr. Harrington, you or I, no individual out there
on the street could freelance and have the Attorney General
do this.  The Attorney General set in motion the chain of
events that led to everything that happened in that case.
The Attorney General retained the right ultimately to remove
the special prosecutor.  Now, it was --

THE COURT:  But not terminate the case, just
remove the special prosecutor.

MR. BAKER:  Remove the special -- that's right.
That's right.

It wasn't -- the opinion was relatively terse.
One could have hoped for perhaps a better description of
what the boundaries are of what is sufficient control.  But,

1  Your Honor, in this case there is no control because the
2  government is not a person.  This is very --
3          THE COURT:  Well, they argue the no-control issue,
4  particularly under 517 and 518 and under Rule 60.
5          MR. BAKER:  517, 518, that does not enlarge the
6  substantive rights of United States.  As one district court
7  said, it's a housekeeping measure.
8          THE COURT:  Well, it's a pretty powerful
9  housekeeping measure.
10          MR. BAKER:  All it does is allow Mr. Jones here to
11  appear in court.  It does not -- it does not authorize, it
12  does not enlarge the substantive rights of the United
13  States.  And if the government is not a person, he can't do
14  anything in a 292(b) action.
15          THE COURT:  That's an interesting statute argument
16  you make separately about the government being a person.
17          But, of course, under *Vermont Agency* states it is
18  sovereigns are not persons.  But that's I think a very
19  different argument in the context here because -- are you
20  making the argument that the government can't even bring
21  charges -- or bring a civil penalty under 292(b)?
22          MR. BAKER:  Absolutely, Your Honor.  I'm making
23  the argument that the government is foreclosed from doing
24  anything under 292(b).  The exclusive remedy of the
25  government here -- in fact, there's a case we cited, since

1   the government is in history, the government has relied upon

2   hundreds of years of history.  But we have a case that's a

3   hundred years old -- I think it's the *Morris* case we cited,

4   from the district court in Ohio, the *United States v.*

5   *Morris*, Tennessee 1866, in which a false marking claim

6   was -- by the government was denied.  It was dismissed

7   because the government is not a person.

8           Harvard Law Review cites that case as the

9   government can't bring an action under 292(b).  It's simply

10  a person.  If we're going to rely upon history --

11          THE COURT:  Well, we do have to rely on history in

12  this context and we have to look at it from both sides.

13          So what you're doing is saying that 292(b) is just

14  surplusage.  You have read 292(b) to a nullity that you

15  could never bring a 292 action.  Isn't that quite clearly

16  under statutory construction you never read a whole

17  subsection of a statute to a nullity?

18          MR. BAKER:  Persons who suffer actual injury.

19          THE COURT:  So you're talking back only to the

20  competitor or the person who is intending to file a patent

21  or something like that.

22          MR. BAKER:  It may be a small category of

23  plaintiffs but there are still plaintiffs who can use

24  Section 292(b) to vindicate their personal interests.

25          THE COURT:  So are you reading the word "any" to a

1  nullity?  Any person?  You're now saying any person but

2  these limited persons.

3       MR. BAKER:  Article III imposes limitations on

4  them, Your Honor.

5       Your Honor, even if you disagree, which it appears

6  you may well --

7       THE COURT:  No, I do have questions for them also.

8  Don't worry.

9       MR. BAKER:  Even if you think the government is a

10  person that would otherwise have rights under 292(b), we

11  have gone through and shown you how under your hypothetical

12  we have a settlement.  There's nothing the government can

13  do.  The government has admitted in the Supreme Court that

14  they would be bound by a settlement between a relator --

15       THE COURT:  Your footnote was incredibly

16  fascinating about the *Eisenstein* case.  Mr. Jones's footnote

17  was incredibly fascinating about the *Eisenstein* case.

18       His contention is, you're talking basically about

19  the period of appeal, the private party might have the same

20  level time period of appeal; and your contention is that the

21  government conceded something much broader than just whether

22  the private party has the same term of appeal.

23       MR. BAKER:  They conceded -- in fact, one of the

24  same attorneys, not Mr. Jones but some of the same names are

25  on both briefs here -- the government conceded in the

1    Supreme Court that when a relator of a False Claims Act

2    settles, the government is bound by that under res judicata.

3          THE COURT:  Well, yes.  But that's because the

4    specific governs the general.  Right?  Specific in the False

5    Claims Act is this is exactly what the government is

6    supposed to do.  You don't have that here.  At least I think

7    that would be the argument.  Maybe it's not your argument.

8    You might want to adopt it, though.  (Laughter)

9          MR. BAKER:  It would be most remarkable that a

10    statute that gave greater control actually ends up giving

11    the government less authority than they have in this case.

12          THE COURT:  Well, that's a good retort back.

13          MR. BAKER:  There's no statutory authorization for

14    anything under Section 292(b).  So in the context of the

15    False Claims Act the government has conceded when there's a

16    settlement that the government is bound by that.  But even

17    more importantly, the government conceded in --

18          THE COURT:  I can see the distinction, though, is

19    that if the government -- if there's a settlement in a False

20    Claims Act, it can only occur after the government has been

21    actively brought into the case.

22          You know, the government gets right up front under

23    seal the whole statement of the case as put together by the

24    relator.  And the case doesn't proceed until the government

25    either affirmatively intervenes or declines -- well, let me

rephrase that.

The government has what, 60 or 90 days -- when I
was doing these I always took a lot longer because the
judges were nice enough to give me extensions.  But I mean
the government is brought in early and is an integral player
all the way through.

And here they are claiming, okay, the government
doesn't get involved early.  We might get one notice in the
form of the notice of the Patent Trade Office.  But if
there's a bad settlement, particularly a settlement in the
context of a hypothetical I put forth, that the relator and
the defendant were conspiring in a sense to give a really
good deal to the defendant, that they could come in.  The
facts are a little different.

MR. BAKER:  That's why the statute is
unconstitutional.  It's unconstitutional because they have
no controls.  They can't stop the settlement and then it's
binding on them.  That's exactly --

THE COURT:  The last thing is the critical part.
Is it binding on a party that didn't have notice of the
settlement?  And that's -- False Claims Act, the government
does have notice of a settlement because the government has
to sign off on the settlement.

MR. BAKER:  Your Honor, there's nothing in the
statute, this statute, that requires any notice be provided

1    to the government; if Mr. Harrington and we settle today, we

2    settle.  We can settle.

3              THE COURT:  You're right about that.

4              MR. BAKER:  So the government is stuck with that.

5              THE COURT:  He'll agree, or plaintiffs --

6    plaintiff and the United States will agree I think there's

7    nothing other than the PTO notice to the government.  But I

8    don't think they will agree with you that they are stuck

9    with the settlement.  In the False Claims Act they are stuck

10   with the settlement because they are a necessary party to

11   the action by statute.  But they are not -- they are

12   claiming here -- they are actually arguing that they have to

13   be a necessary party for it to be legitimate.

14             MR. BAKER:  They are talking out of both sides of

15   their mouth.  They are saying we don't have control, but yet

16   we can set it aside.  We can set it aside because we don't

17   have control.  It's because we don't have control --

18             THE COURT:  I see what you're saying.  They are

19   saying we do have control.  That at the end if we find out

20   everything has gone in an improper direction, we do have

21   control because we can come in then.

22             MR. BAKER:  There's no legal authority for that,

23   Your Honor.  Claim preclusion is claim preclusion.  Under

24   the Supreme Court --

25             THE COURT:  Claim preclusion doesn't apply here

1    res judicata.

2              MR. BAKER:  It's the same thing, Your Honor.

3              Claim preclusion is the more modern -- in fact, we

4    cited a case in our initial response brief where the

5    government -- the Supreme Court said that third parties can

6    be bound for purposes of claim preclusion when there's an

7    assignment.  When a litigant actually represents the

8    assignee of one of the other parties, third party, that

9    third party is bound.

10             That's exactly what we have here.  If

11   Mr. Harrington is the government's assignee, then the

12   government is bound as a matter of claim preclusion.  And

13   there's no response to that.

14             So if they are going to assign their rights away,

15   they are stuck with the consequences.  And one of the

16   consequences is claim preclusion.

17             THE COURT:  Well, I agree with you, but they are

18   saying that you overcome claim preclusion because we have

19   60(b), and we have 517 and 518.  But for those.

20             MR. BAKER:  Sections 517, 518 don't enlarge the

21   rights of United States.  And let's look at 60(b).  I took

22   the Court through the test.  There's no response by the

23   government from that.

24             THE COURT:  The part you cite to -- they cite to

25   some different parts where there's not a party --

1    MR. BAKER:  Well, there's an independent action,

2    an action -- Chief Justice Rehnquist wrote, "It would be a

3    gross injustice, it's the rarest of things for an

4    independent action to succeed."  How can this be --

5    THE COURT:  That's their point.  They intervene

6    when it's gross injustice.

7    MR. BAKER:  How can it be a gross injustice when

8    the statute contemplates it?  The statute contemplates it.

9    THE COURT:  Well, I'm not sure -- I'm not sure

10   Congress contemplated that there would be a settlement that

11   would harm the interests of the United States that would

12   preclude possibly a criminal prosecution because of double

13   jeopardy, which is a whole other issue we'll get off on in

14   just a second, or would be such an unjust settlement that

15   basically the defendant has gotten away with something that

16   otherwise is a criminal act.  But that's just me thinking

17   out loud.

18   Let me throw out the double jeopardy issue to you.

19   You mentioned double jeopardy once or twice.  They don't

20   mention double jeopardy.  They say they always have the

21   right to bring a -- the United States has a right to bring

22   criminal charges.  Why are they wrong?

23   MR. BAKER:  Your Honor, this is a difficult

24   question, and I've looked --

25   THE COURT:  I'm actually throwing a softball to

1   you on this one.

2           MR. BAKER:  I've looked at this question.  I

3   believe, and it would be our position, that double jeopardy

4   would preclude criminal enforcement thereafter.

5           THE COURT:  It goes back to the punitive versus

6   remedial.  Right?

7           MR. BAKER:  That's exactly right.  They are

8   seeking relief here, vindicating the public rights of the

9   United States punitive -- through this punitive mechanism

10  would be a bar to a subsequent criminal prosecution.

11          THE COURT:  It is a fascinating question.

12          If a civil settlement were to involve, say, all

13  one million boxes of contact lens solution that are out

14  there in the market, and the damages are -- say the damages

15  end being statutorily something enormous, a million

16  dollars -- no, $50 million more likely -- and you're dealing

17  with maybe only a million dollars of product out there -- I

18  don't know -- but just say there's such a huge differential

19  between the retail value of the boxes out there, and when

20  you get $500 per instance, the potential for damages, those

21  damages clearly are reaching the punitive realm, it does

22  seem that that would really bar the government from coming

23  back later and doing a criminal charge.

24          Now, what the parties can do -- the government can

25  always do, rather, not the parties -- the government can

1  charge conspiracy or can charge mail fraud, but it can't

2  necessarily charge 292, a criminal 292 offense.

3  MR. BAKER:  That is our position, Your Honor.  The

4  imposition of relief under Section 292(b) to a private qui

5  tam relator would bar subsequent criminal action.

6  THE COURT:  You have been a very patient person.

7  MR. BAKER:  No, Your Honor.  You have been.  Thank

8  you.

9  THE COURT:  Your 20 minutes went to about 50.  But

10  this is too important an issue just to rely exclusively on

11  the briefs.  These are issues that really need to be

12  developed.

13  Let me go to the plaintiff's table.  Does the

14  plaintiff or the government want to start?

15  MR. CIPRIANI:  I'll start, Your Honor.

16  May it please the Court.  I'll address issues in

17  the same order as Mr. Baker did.

18  We started out listening to a claim that there's a

19  failure to state a claim.  Now Judge Brinkema did not find a

20  failure to state a claim.  Judge Stein found a failure to

21  state a claim.  It's unclear -- and I have not pulled the

22  Complaint -- whether this was just bad pleading, or, in

23  fact, his ruling extends to no one could ever state a claim

24  under 292.

25  THE COURT:  Well, in his opinion he says that the

1  plaintiff alleged only that the defendant knew or should

2  have known, and not that the intended -- the defendant

3  intended to deceive.  And that is clearly not an actual

4  injury if you're just pleading knew or should have known.

5      MR. CIPRIANI:  If they only pled knew or should

6  have known, that's definitely a defective pleading, and I

7  think that's quite possible because he clearly did not

8  declare the statute facially invalid.

9      THE COURT:  Oh, no.  When you read the opinion,

10  it's a very narrow, very targeted decision, and he dismissed

11  the case.  He could have said, "Okay, plaintiff, go amend

12  your Complaint."  But he didn't.  But the plaintiff can

13  amend their Complaint and file a new action.

14      But it's -- it really isn't -- I don't think it is

15  applicable to our facts, and I think Judge Stein's opinion

16  is correct just by reading his opinion.  I haven't read the

17  Complaint in that case.  But his opinion is correct.  He's

18  right.  You've got to actually allege an actual injury to

19  have Article II standing, period, whether it's the United

20  States or a relator.

21      MR. CIPRIANI:  And I think, though, they asked you

22  to extend that claim, and they kind of resurrected an

23  earlier argument in their latest brief that says that 292

24  itself, even if you plead the elements, does not come to the

25  level stating a claim because there is no damage claim.

1          But if that was truly the rule, then the

2   government can never have standing in this room on any

3   criminal case for a crime.  You know, intent to traffic, you

4   know, there are many, many people --

5          THE COURT:  Well, how much, since this is a civil

6   action -- and at least from a procedural side this is a

7   civil action.  In civil actions when you're dealing with

8   kind of fraud, intent to deceive, you do have to have more

9   specificity.  How much do you have to have to have a

10  sufficient notice complaint?

11         MR. CIPRIANI:  I believe that's answered in

12  *Clontech*.

13         In *Clontech* they say two things: specifically this

14  is not a fraud-based complaint, and to the extent that the

15  number of circuits prior to the existence of the federal

16  circuit had made analogies to fraud, they were incorrect.

17         But they also said this is not a strict liability.

18  And it's not a strict liability not because strict liability

19  crimes are unconstitutional, it's not strict liability

20  because of the simple reading of the words in the statute.

21  It has two elements:  Mismarking of a product where the

22  patent element does apply with a certain level of intent.

23  Now, had it been strict liability it would have said if you

24  mismark a product where the patent number does not apply,

25  you'll be fined $500.  That's not what the statute says.

It's not what it's ever said under 292(a).

So there is an intent. An intent under 9(b) for anything is always alleged generally because, you know, you can -- we can never, prior to discovery, peek into the head of, you know, the Board of Directors and say, "What were you thinking?" We have to look at their actions. And their actions definitely suggest an intent to mismark.

So we know it's not strict liability. There is the intent element. We know 9(b) says intent can be pled generally.

I would then like to go to -- Mr. Baker transitioned from that and he says once you have standing, you don't have to parse claims. And I think that's completely incorrect. And he said that in conjunction with only proprietary claims can be assigned, sovereign claims cannot be assigned. And I think those two propositions are both clearly wrong.

THE COURT: He says, though, you can assign sovereign claims so long as you have an entrance to the sovereign claims through proprietary claims.

MR. CIPRIANI: And I think that is belied with history starting with the term qui tam itself. And I won't butcher the entire Latin phrase, but it stands for the fact that who sues in the name of the Lord, our king.

Now, a king by definition is sovereign. If you

1    look back to the history, the 500 years of history that the

2    government documents so well, the original qui tams were for

3    injuries to the sovereign.  To the sovereign nature.  You

4    broke a law and since I don't have enforcement out in the

5    hinterland, I am going to allow my sheriffs, my counts to

6    enforce my law in my name.

7            THE COURT:  Their distinction on that would be

8    absolutely right when dealing with King George.  But once

9    you had a constitution drafted in 1887 it changed; and you

10   still could have qui tams, but the qui tam now has to be in

11   the context of the constitutional authority of the

12   Executive.

13           MR. CIPRIANI:  That goes to the Article II

14   argument, which I'd like to address.  Two things:  It goes

15   to Article II and it goes to Article III.

16           They try and get around the Article III and say we

17   have no problem with all these competitors suing under

18   292(b).  And that's where we roll back to once you have

19   standing, you don't have to parse the claim.  That is

20   incorrect.

21           If there's a gentleman that hits me on the car on

22   the way driving to the courtroom here, I have standing to

23   sue him for my personal injuries.  Simple case, of course.

24   This being federal court you don't need diversity, all of

25   that.

1    But if he's defrauded someone else, I don't have

2 standing to sue for his fraud tort.  Absolutely not.

3 Standing is on a claim-by-claim basis.  If you look at

4 292(a), the standing is always inchoate injury to the

5 public.

6    So to the extent a competitor can sue for the $500

7 per instance in this marking, it's not.  If you look at the

8 30-plus cases that came through the number of circuits and

9 the federal circuit, they are not countersuing for the one

10 product they bought and looked at.  They are suing for every

11 product that was ever mismarked; that the injury is the

12 injury defined by Congress of its intent of being out there

13 to deceive.

14    If you want to look at a competitor, an injury to

15 competition, often another counterclaim you see is a Sherman

16 Act.  You always see that.  Hey, it's anticompetitive.  It's

17 a violation of Sherman.  That is a separate tort that a

18 competitor has standing to bring.

19    But there's standing to bring 292.  It has always

20 been this partial assignment of the government's right,

21 because that's all it can be because under 292 they are not

22 hurt.  They might be hurt under Sherman Act and the rights

23 it created, they might be hurt by the patent infringement

24 suit if it's malicious, but as to 292 itself the standing

25 has always been for all the reported cases, an assignment, a

partial assignment.

THE COURT: All right. Why is it that -- well, do you agree or disagree that whether this is -- has the nomenclature of a civil matter or criminal matter makes a distinction?

MR. CIPRIANI: I think the distinction is clear that 292(a) was the start of the statute, which was a criminal matter. 292(a) could have only been vindicated by the government.

THE COURT: Why is that? I mean, there can't be --

MR. CIPRIANI: Well, the "any person may sue" was added later.

THE COURT: Right. I'm wondering in our law enforcement history didn't we have private prosecutors actually doing criminal cases?

MR. CIPRIANI: I think there is a history of that. And they were assigned, you know, through specific procedures in various cases. I know still today there are private prosecutors for certain crimes. They are assigned I guess through the Executive Branch. I'm not sure if it's an exactly parallel situation. But I think it has definitely occurred and still occurs in certain rural areas of the country.

THE COURT: Certainly in state court it occurs

1   quite a bit.  Sorry.  I interrupted you.

2              MR. CIPRIANI:  No, that's -- 292(b), where it's

3   definitely a civil action, is procedurally civil and it's

4   partial assignment of the right.  And I think you have, you

5   know, a fairly clear break here in that 292 created a civil

6   action much like Congress or common law can create a

7   wrongful death suit.

8              You know, if someone sues for wrongful death, it

9   doesn't stop the government for also prosecuting for murder

10  and vice versa.  Now, you have the entire judgment.  Once

11  you get to the whole damage has been accounted for, you

12  know, there's nothing left.

13             Then -- and that take us, though, to the

14  Article II argument.

15             The important thing I think to think about the

16  Article II argument in the Take Care Clause is the attack

17  they made on the statute is a facial attack.

18             They asked this Court to rule the whole statute

19  unconstitutional as, you know, being invalid under

20  Article II.  And in doing so you're basically going to

21  invalidate every qui tam other than the FCA.  Because almost

22  all the other qui tams -- the Indian law qui tams, qui tam

23  for shiphold design under the Copyright Act -- almost all of

24  these do not have a statutory scheme of the FCA, and none of

25  the others are vindicating a right to the public hist (ph),

1    to the federal treasurer.  Only the FCA is the only one.

2    And the important thing about the FCA, it was held

3    constitutional under numerous challenges.

4            THE COURT:  But only at the circuit level.

5            MR. CIPRIANI:  At the circuit level.  Obviously

6    never declared unconstitutional prior to having these

7    things.  And the courts all said the same thing; the Supreme

8    Court said the same thing in *Kingsley Books* in a similar

9    situation.  Our job is not to determine if this statute is

10   drafted in the best manner it could be drafted.  I don't

11   think anybody would argue that.  But their complaints are

12   address to the wrong forum.  That's what you see in *Brinknus*

13   (ph) decision talking about the *Beck* decision, about the

14   *U.S. ex rel Melum, Milum.*

15           If you need the statute tweaked, Congress is the

16   place to go to do that.  It does not make

17   it unconstitutional.  And as a facial challenge they have to

18   prove it would be unconstitutional under each and every set

19   of circumstances under Article II.

20           Now, the problem with that is the situation we

21   have right here, we can talk about the what ifs of if I

22   offered to settle with Mr. Baker for a dollar, could they

23   then come back and overdo that because that's clearly -- you

24   know, we did this all for wrong reasons.  That hasn't

25   happened here.

1          And when you start to look at hypotheticals, you

2     know, you can change one fact, change one fact, and change

3     one fact, but the facts here are the government is not

4     aggrieved.  The government has not complained.  In its

5     entire history, the government has filed one single criminal

6     prosecution under 292(a) and that was for a complete

7     copyright under the first paragraph --

8          THE COURT:  How did you find that?

9          MR. CIPRIANI:  It was just out there.  Actually it

10    was -- it was a case where the person that owned the U. S.

11    patent made a product and someone in Asia made a complete

12    knockoff and they violated a trademark and a copyright.

13         THE COURT:  Was that a recent prosecution?

14         MR. CIPRIANI:  No, I believe it was not recent.  I

15    believe it was the '70s.  It was down in Florida.

16         THE COURT:  I don't know how you found that

17    because I don't think there's a database out there kept by

18    the Justice Department as to when every particular charge is

19    brought.

20         MR. CIPRIANI:  It's the only one I've ever seen.

21         But I don't know, obviously as you get back to

22    where qui tams were used much more, unfortunately the less

23    the database.  It gets much, much thinner.

24         I think history indicates they were used, you

25    know, relatively commonly.  You know, as you look at these

1  ones being passed, the First Congress, you know, was passing

2  qui tams.  They expected them to be used, and used a lot

3  more for the same reason that private criminal prosecutors

4  are used in rural parts of the country.  It's just the

5  manpower was needed.

6        THE COURT:  That's what I was saying earlier, the

7  public policy was to have more prosecutors out there than

8  the United States could afford to pay on salary; empower

9  private prosecutors by giving them a commission.  Goes back

10  to what I was said about John Paul Jones, the father of the

11  Navy, was a privateer.

12        MR. CIPRIANI:  Exactly.  You know I think that's

13  what holds here.

14        So I think given that long history of use, you

15  know, what the Supreme Court in *Salerno*, the Supreme Court

16  in *LA Police* says is we don't use hypotheticals in light of,

17  you know, a statute and a scheme that's been used many, many

18  times, we shouldn't used hypotheticals.  We shouldn't think

19  of "what if" could go wrong to support a facial challenge.

20  Now later, if something happens, then you have as-applied

21  challenges under those developed facts.

22        But under the facts we have here today there's

23  been no interference from the government, there's no

24  complaint from the government.  The fact is we are

25  proceeding with this without having interfered with any

1  planned government action whatsoever.

2          THE COURT:  But what -- well, I believe in your

3  pleadings you said the only time the Court can deal with a

4  facial unconstitutionality is in the First Amendment

5  context.  What's the distinction between the First Amendment

6  and Article II?

7          MR. CIPRIANI:  Well, I believe a challenge is

8  appropriate -- the Supreme Court has said overbreadth is

9  only ruled in First Amendment.  There are some circuits that

10 also say overbreadth applies to any fundamental right --

11 which, in the context is abortion cases, there's a split on

12 abortions; the Supreme Court has said you can use

13 overbreadth.

14          You can do a facial challenge without overbreadth

15 so there is some difference there.  But this is clearly not

16 a First Amendment case because, I mean, they haven't argued

17 it, it's commercial speech; you have no fundamental right to

18 lie to the public in a commercial speech as you would a

19 political speech or something else.

20          But then it goes to the standard way to prove a

21 facial attack.  A facial attack is to say no matter what

22 situation you're going to apply this under, and we'll look

23 at every possible set of circumstances, it's

24 unconstitutional for that reason under all of them.  And

25 under Article II that just can't be, because in this case we

don't have any interference with the government.  You know,
we've not displaced the government under the *Morrison* v.
*Olson* test, under the way of Judge Brinkema, there's nothing
we have done that's gotten in the way of the government.

THE COURT:  Well, but they would disagree with
you.  Their argument would be that, you know, in this
particular case the government's here because this Court
brought the government in, and that the government is
sitting here saying, "Well, we're not opposed to you, as the
relator, or Mr. Harrington as a relator, bringing this
action."  But the government is only here because we told
them.

MR. CIPRIANI:  Exactly.  And that's the facts of
this case.

So in order to prove an as-applied challenge in
this case, what they would have to show is that the
government was starting an investigation, and that our
discovery or our settlement suddenly made the government
helpless.  But the government had no idea of their
mismarking until we brought this case.

Now, having found the mismarking, the government
has no objection to us continuing with this case.  So in
this case we have not interfered or displaced the federal
government's authority in any matter.  So it fails facially
and it fails as an as-applied challenge.

1    THE COURT:  Let's jump over to double jeopardy.

2  You say right up front the government always can bring a

3  criminal case for a 292 violation.  But what if you've

4  entered into a settlement agreement where you really are

5  getting $50 million of damages, or $500 million in damages

6  for a million individual boxes out there at Wal-Mart and,

7  Rite Aid, and every other store that sells pharmaceutical

8  supplies?

9    MR. CIPRIANI:  I think in that case, then, quite

10  simply the government can initiate a federal prosecution

11  and, if the facts are there, get a criminal conviction.  The

12  only problem they have at that point is they have assigned

13  in their partial assignment -- all the damages they could

14  possibly get has already been paid to their agent which paid

15  them half.  So they couldn't get any more damages but they

16  could get the criminal convictions under 292(a).

17    THE COURT:  So you reject the idea that -- that

18  it's not a distinction whether it's a civil procedure or

19  criminal procedure -- or you reject that it's a distinction

20  between remedial and punitive versus criminal and civil

21  procedure.  Judge Brinkema said this is a civil proceeding;

22  take control is really not a big deal because it's civil.

23  If it was criminal, it would be a different story.

24    MR. CIPRIANI:  I agree with that in that this is

25  definitely, number one, definitely a civil procedure so

1   there is a distinction.

2           THE COURT:  It's a civil procedure.

3           MR. CIPRIANI:  It's a civil procedure, a civil

4   action.  That's the only way we can be here is as a civil

5   action.

6           The civil action was created by Congressional

7   action, partial assignment based on the facts of something

8   that were a crime.

9           To, again, to go back to a very common example

10  would be murder.  You know, there were certain facts that

11  make something a murder.  Now, Congress could eliminate the

12  tort of wrongful death or it can create a tort of wrongful

13  death.  Wrongful death is common law.  But you can have a

14  tort that mirrors all the elements and it's still a separate

15  action from the crime.

16          Yet in this case, if you had a case where we

17  collected the whole and entire 500 million -- one million

18  boxes, it's still a partial assignment.  They still have a

19  right to file the action; but when it came to damages, the

20  judge would say they've paid it off so there would be no

21  damages left.  But --

22          THE COURT:  So you are rejecting any sense of

23  double jeopardy.

24          MR. CIPRIANI:  I reject any sense of double

25  jeopardy, and I think that leaves us room to get back also

to your hypothetical.

If your hypothetical were to occur, and there's a million boxes put out there, and, you know, I say, "Hey, let's do a settlement. We'll settle this thing for $500. It's a wonderful deal for you." I think then the government finds out about it and says, you know, "No, that is completely unjust." They then sue for 999,999 cases of mismarking, get whatever punishment they get, you know; the depth of $250 they got from the settlement out of that and they still get their criminal conviction, and they still get to use what was left of the partial assignment.

THE COURT: If the civil settlement is merely for one box, and, therefore, $500, then I don't know if the government would be opposed to that, because that's the maximum they get for that one count. The government still can sue for the other 999,999 boxes.

But I'm saying if you take the universe of boxes out there, and the settlement is for $500 million with universal boxes, I think, according to what Justice Scalia says in *Bajakajian* -- which I never say correctly but you all know what I'm talking about -- Justice Thomas would say that's punitive, and double jeopardy could attach, and that would bar a criminal prosecution. And that takes away one of your strong control mechanisms.

MR. CIPRIANI: Well, that's true. And I think as

1   you get up towards the 500 million, obviously you become

2   punitive.

3           If you're looking at the universal boxes -- and

4   when I said $500 settlement, the way the settlement would be

5   written was that this covers all million boxes that you put

6   out in the last five years.

7           THE COURT:  That probably is remedial, and then

8   your criminal prosecution wouldn't be barred.

9           MR. CIPRIANI:  Exactly.

10          THE COURT:  But it would bar a damage settlement

11  in the criminal case, or a separate -- it might bar a

12  separate civil action.  That would be their contention, it

13  would bar a separate civil action.

14          MR. CIPRIANI:  It could possibly bar a second qui

15  tam claim.

16          THE COURT:  Yes.

17          MR. CIPRIANI:  I think that's an open question.

18  But --

19          THE COURT:  It's not going to bar the government.

20          MR. CIPRIANI:  It's not going to bar the

21  government except as to the $250 that's collected.

22          THE COURT:  But if you're the assignee of the

23  government, you're acting on behalf of the government, you

24  put in writing we're selling for this pittance, this minimal

25  amount of money, for all boxes out there in the retail

1     market, I don't see how that bars the government other than

2     the government coming in after the fact and filing a 60(b)

3     motion or something like that.

4           MR. CIPRIANI: Well, I think the answer to that is

5     in *Vermont* in that it is a partial assignment. It never

6     says it's a complete assignment of all their rights. It's

7     simply a partial assignment.

8           THE COURT: Well, is that partial assignment of

9     the authority to negotiate or partial assignment of the

10    recovery?

11           MR. CIPRIANI: I think it would be a partial

12    assignment of the cause of action that the government has.

13           THE COURT: Well, then what's your limit? So you

14    can't -- see, that raises an interesting question.

15           I always read that as a partial assignment of the

16    recovery, and that's what gave you the interest of

17    getting -- the economic incentive of getting in the case.

18    But it didn't bar you from negotiating for all the potential

19    292 claims that are out there.

20           MR. CIPRIANI: Well, I think in the claims -- how

21    many claims you do is going to be by the complaint.

22           THE COURT: But I mean it could be a million

23    claims, every single box.

24           MR. CIPRIANI: Absolutely.

25           THE COURT: That's a whole different issue.

1  What's a claim or what's the offense here?  Is it the one

2  box, or is it a gross of boxes?  What some of the cases say,

3  the day's printing of boxes at a particular factory?  Or is

4  it -- I mean that's something we'll be dealing with in the

5  future, I'm sure, assuming we get through today's hearing.

6  (Laughter)

7          MR. CIPRIANI:  Yeah.

8          THE COURT:  You're saying --

9          MR. CIPRIANI:  Double jeopardy.  Just that there

10  is no double jeopardy.  If the defendant murders someone,

11  the government can prosecute them.  A victim, you know,

12  family member can sue them.

13          In this case, though, because the government

14  cannot put a violater in jail, the government's only

15  recourse is up to $500 per incident, or per offense, you

16  have a lot of different issues where the government is going

17  to give the offense the same way as the qui tam relator

18  settles it.

19          So, granted, there's a lot of issues.  But in

20  those issues, when you get into the cases where the

21  government actually wants to, which is where we settled for

22  a dollar, $500 for this $500 million claim, that's when all

23  those things I think look very reasonable in the discretion

24  of the trial court to say, "Even though your settlement

25  agreement says this $500 settlement is for a million counts,

no, there's still something left on the partial assignment.
I'm going to let the government go at you in a criminal
prosecution for the balance of what's out there."

         Now, how does that play out?  Again, that's a
hypothetical and we don't know how that plays out.  I think
that's a reason why --

         THE COURT:  I agree if there's a balance of claims
still out there.  But I don't know how you arbitrarily draw
the line when you are negotiating in this civil case, you
say, "Well, I can't settle every single one of these claims,
civil claims, because the government has to keep a couple
because I've only got a partial assignment."  And certainly,
you know, Mr. Baker is going to be going, "Hey, we're not
going to sign on the dotted line here unless this covers
every potential civil claim out there."

         MR. CIPRIANI:  As to civil claims, yes.  As to
claims under 292(b).

         THE COURT:  Well, okay.  I mean 292(b) claims.

         MR. CIPRIANI:  As to 292(b), I do believe they
would be precluded.  I don't believe that a second qui tam
relator can come after the first and sue under 292(b).

         THE COURT:  I agree with you there.  But what are
you leaving, then, for the government?  I don't quite
understand.  What are you leaving for the government on the
damage side, not the punishment -- let me rephrase that

because punishment might be damages -- on the liberty side, putting handcuffs on a corporate officer or the corporation itself pleading guilty to a crime.

MR. CIPRIANI:  Well, I mean, I think the settlement goes the same way.  You know, again to go back to wrongful death.  A wrongful death plaintiff can file suit while a murder trial is go on.

THE COURT:  But that's the wrongful plaintiff.  That's a direct victim of the wrongful death, not a relator.  The injured party here is United States, or society, which the United States is acting on behalf of.

MR. CIPRIANI:  I believe that's true.  But we're standing in the shoes of the plaintiff at this point.

THE COURT:  Right.  But that's not true in the wrongful death case.

MR. CIPRIANI:  That's not true.  The plaintiff is the actual victim there and that goes to standing issue, but just as to the double jeopardy --

THE COURT:  You're right.  In a wrongful death the estate has to claim on behalf of them.  But still, that's an actual injured party.

Your relator is not an actual injured party unless -- what Mr. Baker says is a relator can only be an actual injured party.  He's saying can only be an actual injured party.  You're saying, of course not, otherwise you

1    wouldn't be here today.  Right?

2            But where -- what I'm saying is if you settle

3    every single civil or claim out there for damages, every

4    single one, and you were getting $500 each, you're agreeing

5    that another relator can't come in.  You're saying, Oh, I

6    agree another relator can't come in and file another action.

7    But you're saying the U. S. Government can still file an

8    action.

9            MR. CIPRIANI:  Absolutely.  I believe they can.

10           THE COURT:  What is that action for specifically?

11   What is the government seeking in that action?

12           MR. CIPRIANI:  They are going to seek a criminal

13   conviction with a sovereign injury.  If the actual

14   settlement or the actual trial came out in the prior civil

15   action that indeed in the smallest way that you can consider

16   an offense, in this case every box or every patent number on

17   a box, maybe even four offenses per box, if they say, you

18   know, $500, and it's the maximum award for every possible

19   offense, then there's nothing left for the government to get

20   and I'd doubt they'd pursue it.

21           THE COURT:  On the money side.

22           MR. CIPRIANI:  But you still get a conviction.

23           THE COURT:  That's what I'm saying.  I'm saying

24   that the developing case law in this area in the last ten

25   years is an excessive fine is punitive, and, therefore,

1  double jeopardy attaches.

2      MR. CIPRIANI:  And I think in the case of $500 per

3  instance on a product that's a $8, $10 product.

4      THE COURT:  You get all million of them out there

5  in the retail world.  So there's a $500 million payment from

6  defendant to you, and then you split that $500 million with

7  the United States Government, you're saying, though, you

8  believe the United States Government still can come back and

9  criminally prosecute.

10      MR. CIPRIANI:  Under the punitive damages, you

11  know, once you get to truly a punitive nature, probably not,

12  at least realistically; and I think that's a close

13  constitutional question that you're going to have to

14  discern.

15      THE COURT:  It's an important issue here because

16  that's your lead -- in your particular brief, that's your

17  lead as to the government has control here because they can

18  always bring a criminal prosecution.  But I don't think

19  right now that's the state of the law based on recent

20  Supreme Court precedence.

21      MR. CIPRIANI:  And that's possible, but I don't

22  think that that's our lead.  I think what our true lead is

23  the government -- there's nothing for the government to have

24  control over now because they don't want it.  Until you try

25  to do something, there's no measure of strength.

1            THE COURT:  Well, I understand that.

2            MR. CIPRIANI:  So I mean my biggest argument there

3      is simply that if you invalidate this statute under

4      Article II, it is clearly you are facially invalidating.

5            THE COURT:  You still have to overcome the

6      constitutional attack, though.  You still have to show me

7      the control mechanisms of the government.  And if you do,

8      then I don't have to -- I don't have to deal -- I can say

9      it's constitutional because you have control mechanisms.

10            MR. CIPRIANI:  Well, I do believe there are

11      control mechanisms out there, although I would also say

12      under the strong presumption of validity of the

13      constitutional, of Legislative acts --

14            THE COURT:  Right.

15            MR. CIPRIANI:  -- that they have a very heavy

16      burden, and it's not even a 50/50 burden.  It's something

17      closer to a clear and convincing evidence that they have no

18      control.

19            And I think as we look into hypothetically in the

20      future, they do have some control; they do have 517, 518,

21      and they have 60(b).  We don't know how strong these are in

22      the future but we do know they exist --

23            THE COURT:  Right now.

24            MR. CIPRIANI:  -- and I think just the existence

25      they can't show clear and convincing evidence this act of

1   Congress is facially invalid.  And I think that that

2   burden -- even though we attempted to show that in our

3   brief, that it's their burden to show really there's no way

4   it can be -- it's the opposite.  They have to prove the

5   negative of it because of the strong presumption that

6   anything that Congress does is valid, particularly when it's

7   not dealing with a fundamental right, such as the First

8   Amendment or abortion.  Those are totally separate areas.

9          THE COURT:  It's a very complex issue, and I am

10  perplexed about the sequence of things.

11         I understand exactly what you're saying, that you

12  can avoid a constitutional issue because here we don't have

13  the government saying that there's anything wrong.

14         But if I can sit here and look at how there could

15  be problems with this, I still -- I think I still have to be

16  shown how there's no problem because the government -- the

17  government's showing why it has control.  And I'm somehow --

18  when you're saying that really the burden of showing control

19  or lack of control is on the defendants, I'm not --

20         MR. CIPRIANI:  Absolutely.  I think that's the *LA

21  Police* case and the *Salerno* case that says when you are

22  dealing with an act of a legislative, be it state or

23  Congressional, it's not enough to be able to show some

24  hypothetical set of facts; that, you know, you have to show

25  some concrete constitutional harm to them.

1          And in this case, you know, if they would prefer

2     to be prosecuted by the government, and the government were

3     in the process of prosecuting them and then we interfered,

4     then maybe, you know, their constitutional interests in

5     being prosecuted by the government, by "the regular troops"

6     as it was put in the one opinion there, maybe on those

7     facts, and the government says, "Hey, we're going to make an

8     Article II challenge," or they, based on the government was

9     prosecuting them, then you have an as-applied challenge.

10          But here for a facial challenge under *Salerno*,

11     under *LA Police*, just because there are some set of facts

12     that could be unconstitutional, you do not declare the

13     statute wholly unconstitutional.

14          THE COURT:  I think -- thank you.  You have

15     educated me quit well.

16          I'm going to come back to Mr. Baker after I talk

17     to Mr. Jones because I'm sure he wants to reply to that last

18     argument.

19          MR. BAKER:  One point briefly?

20          We're not making a facial attack.  This is an

21     as-applied challenge.  We concede that if a person has

22     suffered actual injury, Section 292(b) can be

23     constitutionally applied in those circumstances.

24     Section 292(b) is unconstitutional as applied in any case,

25     as here, where there's no injury on the part of the relator.

So this is not a facial attack.  This is an as-applied

challenge.  I'll come back.

THE COURT:  I'm going to come back to you on that.

MR. CIPRIANI:  I would argue, just super quickly,

their Article III argument is as applied but their

Article II argument is definitely is facial attack because

it invalidates the entire statute for everyone.

THE COURT:  No -- yes.  Yeah.  You need to respond

to that, because that is a pretty strong -- the distinction

between the Article II and Article III issue, because you

are raising the government doesn't have control, and the

government is sitting here today saying, "We have control."

MR. BAKER:  Your Honor, there is a Section 292

standing -- Article II and Article III are flip sides of the

same coin, as Justice Scalia said.

In a case in which a competitor has been injured,

a competitor's product has been copied, the competitor --

that is, the patent number has been copied -- that

competitor can bring a 292(b) action in our view without any

involvement of the government, without any controls by the

government, because the competitor is seeking relief for its

injuries.

In any other hypothetical, if a plaintiff has

actually been injured somehow by a 292(b) action -- excuse

me, by an alleged patent mismarking, that would not be an

1    unconstitutional application of 292(b).  This is not a

2    facial challenge under Article II.  It's an as-applied

3    challenge under Article II -- should be.

4            THE COURT:  Right.  We'll still come back to you.

5            Mr. Jones, your turn.

6            MR. JONES:  Your Honor, the recent discussion -- I

7    just want to turn to the last point you have been talking

8    about with double jeopardy.

9            And in the False Claims Act there was a case in

10   which the Court said that the follow-on civil action was

11   prohibited by application of the double jeopardy clause when

12   there had been a prior criminal conviction.  That is *United*

13   *States v. Halper* (ph).

14           But *Halper* has been pretty much if not directly

15   overruled.  Its validity has been seriously questioned by

16   the Court itself.  I think that was -- unfortunately I can't

17   recall and I don't have the cases in front of me.

18           THE COURT:  I faintly remember that case.  As I

19   recall, it got back to the same issue:  Was the civil,

20   subsequent civil action merely remedial?  And then it's

21   clearly appropriate.  And if the subsequent civil action was

22   punitive, meaning what was being sought by the government

23   was basically punishing the wrongdoer twice, then it was

24   barred.

25           MR. JONES:  Well, there are two constitutional

1  issues that, quite frankly, I think the Supreme Court

2  recognized that it probably got -- conflated them a little

3  bit when they decided *Halper*, and that is under double

4  jeopardy which precludes both a second prosecution, as well

5  as a separate punishment, and the excessive fines and

6  penalties under the Eighth Amendment, which talks about the

7  size of the penalty or judgment that's entered.  And I think

8  that as we were talking here, that the more appropriate

9  analysis is under the Eighth Amendment for excessive fines

10  and penalties.

11          THE COURT:  Right.  That's the proportionality

12  analysis.

13          MR. JONES:  That's where proportionality comes in.

14  That's the distinction, whether it's penalty or remedial.

15          THE COURT:  But it's a two-step process.  You

16  first determine whether the civil action is punitive or

17  remedial.  If it's remedial, then there's no proportionality

18  issue.  If it's punitive, then it can only be so punitive

19  that it does not violate the excessive fines clause.

20          MR. JONES:  Well, but it's not -- as it's applied

21  to that facts that are involved in that.

22          THE COURT:  That set of facts, exactly.

23          MR. JONES:  It's not anything that's based on, you

24  know, on its face analysis whether $500 is too much or not.

25          THE COURT:  Right.

1    MR. JONES:  The other point I suppose -- I don't

2  want to get too far into this -- is the statute only talks

3  about imposing penalties up to $500.  And presumably the

4  Court has got discretion to impose a much lower level if it

5  thinks that a $500 penalty would impact them on Eighth

6  Amendment concerns.

7    The defendants have made a major point on the

8  Court's decision in *Lujan*.  And the only point I want to

9  make is we don't disagree with *Lujan* at all.  *Lujan* is

10  clearly correctly decided.  But in *Lujan*, as we point out in

11  our brief, the Court made a specific exception for qui tam

12  actions, although they didn't call it qui tam exactly.

13    But as we point out in our brief, the Court

14  distinguished the suit in *Lujan* from, quote, "the unusual

15  case in which Congress has created a concrete private

16  interest in the outcome of a suit against a private party

17  for the government's benefit by providing a cash bounty for

18  the victorious plaintiff."  That's in *Lujan* at 504, at 572,

19  573.

20    And that's what we have in the qui tam statute.

21  It's where Congress provides a concrete, private interest in

22  the outcome of a suit by the relator, by the private party.

23  So the language in *Lujan* is the normal rule; but where

24  Congress creates a private interest and a private qui tam

25  action, then we have a different situation.  And the

situation is one that Justice Scalia in the *Vermont Agency*
case emphasized to the greatest degree possible what he was
talking about, the history of qui tam actions.

THE COURT:  Standing -- Article II standing --

MR. JONES:  Article III standing.

THE COURT:  Article III standing comes from the
context and the fact that you have a share of the pot, in
essence.

MR. JONES:  It does.

THE COURT:  It statutorily gives an injury in fact
to the --

MR. JONES:  To the relator.

THE COURT:  -- to the relator.

MR. JONES:  Yes.  But defendants may place an
awful lot on the use of the one word "damages" in *Vermont*.

THE COURT:  Right.

MR. JONES:  And it's our position that is way too
much burden for that one word to cover or to carry.  And,
again, the risk of --

THE COURT:  Well, they acknowledge that there's no
explicit statute, rule, or opinion out there that says
exactly what they are saying.  What they are saying is
that's the natural extension of a line of Supreme Court
cases.

MR. JONES:  But we disagree, Your Honor.

1          As Justice Scalia wrote in *Vermont*, you know, many

2    of these statutes that were passed by the early and first

3    U. S. Congress provided that "more relevant here, that those

4    allow the informers to obtain a portion of the penalty as a

5    bounty for their information even if they had not suffered

6    an injury themselves."  They do not have to have any kind of

7    a separate injury that as the relator here does.

8          THE COURT:  So the U. S. Government has the actual

9    injury as defined by Congress, but they have a concrete

10   interest in the case because they get a piece of the pot.

11         MR. JONES:  That's right.

12         And as the Court in *Vermont Agency* said, made very

13   clear at the beginning of the case, that it was beyond doubt

14   that the complaint in *Vermont Agency* asserts an injury to

15   the United States.

16         THE COURT:  All right.  Then why did Justice

17   Scalia drop that footnote at the end of his opinion that

18   says we're not addressing the Take Care Clause?

19         MR. JONES:  Because that was not the issue they

20   had taken on at the time, and they didn't need to reach it.

21         THE COURT:  They didn't need to reach it.

22         MR. JONES:  And because they didn't need to reach

23   it, they simply didn't go there.

24         THE COURT:  Was it argued in the briefs of the

25   parties?

1        MR. JONES:  No.  No.  It was actually raised by

2   the dissent in Justice Stevens and Justice Souter because

3   they would have reached a different decision on the merits

4   of the case and, therefore, they thought that they also

5   needed to reach the Article II issues.

6        THE COURT:  Right.

7        MR. JONES:  Of course, their opinion was that the

8   False Claims Act passed Article II muster as well.

9        THE COURT:  Right.  Right.

10       MR. JONES:  But the important part then is that

11  United States has an injury both in its sovereign nature and

12  in its proprietary nature in the False Claims Act.  There's

13  no distinction between -- the defendants point to the -- to

14  the Law Review article talking about at common law.

15       But common law really isn't at issue here, because

16  we have a statutory provision that assigns the government's

17  interest to the relator in the qui tam statute.  The statute

18  itself makes no distinction between a sovereign interest or

19  sovereign injury or a proprietary injury.

20       THE COURT:  "Statute" meaning 292(b).

21       MR. JONES:  292(b).

22       THE COURT:  Not the False Claims Act.  The False

23  Claims Act doesn't either.

24       MR. JONES:  None of the qui tam statues throughout

25  history have made any such a distinction.  And indeed the

1  historical qui tam actions were primarily involved with only

2  a sovereign injury to the United States, or to the king, to

3  the government, the state government.  It was not a

4  proprietary injury of the United States.

5          And if you examine the statutes that are

6  enumerated in *Vermont Agency* in the footnotes there, almost

7  all of them involve only a sovereign injury to the United

8  States.  I think one them talks about both, about collecting

9  of duties as well, and that is probably a proprietary injury

10  of the government.

11          But in most of them they have to do with only the

12  government's sovereign injury because its statutes have been

13  violated.  And here this qui tam statute mirrors and has the

14  exact same elements as those classic qui tam mechanisms

15  always had throughout history, and there's no reason to make

16  this -- to rest a distinction between sovereign and

17  proprietary on the one word of damages that occurs in -- in

18  *Vermont Agency*.

19          THE COURT:  Well, I think they would argue --

20  Mr. Baker can -- I think they would argue the handful of qui

21  tam statutes that still exist today are a violation of the

22  Take Care Clause except for the False Claims Act, because

23  the False Claims Act has the gateway mechanism of having

24  actual damages to a proprietary interest to the United

25  States; being a false claim submitted to the United States.

1    But they would say that the False Claims Act has been

2    brought forward in time constitutionally through amendment

3    to make it constitutional today, these other statutes need

4    to be brought forward in the same context.  Why is that

5    wrong?

6           MR. JONES:  Because, Your Honor, that sort of

7    ignores the long history of the Supreme Court dealing with

8    qui tam statutes, both in the False Claims Act and in

9    another context, and never once questioning the Article II

10    validity of them, nor it also ignores the cases that we

11    cited in our brief where the Supreme Court says that the qui

12    tam mechanism is one that is available for Congress to use

13    to enforce the statutes of the United States.

14           In the holding of *U. S. v. Constrata*, that's what

15    the Court says:  You look to, when you decide whether or not

16    a statutory scheme is constitutional or not, how it's been

17    applied.  How the U. S. Government has applied it; how the

18    citizens have applied it; relators are bringing these cases,

19    and how the courts have applied it over the course of years.

20    And that greatly informs and supports the presumption the

21    statutes passed by Congress that have enjoyed years and

22    years of use are, in fact, constitutional.

23           And there is nothing that the defendant has

24    pointed to, except this idea that the government cannot

25    assign its proprietary -- excuse me, its sovereign interest

 1  to a qui tam relator, when history shows that that's exactly

 2  the kind of interest that the government has assigned or

 3  Congress has assigned through the use of these qui tam

 4  statutes.

 5        THE COURT:  Explain to me why Mr. Baker is

 6  incorrect with regard to the "any person" language of

 7  292(b).  He says "any person" really isn't any person.  It's

 8  only a discrete collection of potential plaintiffs; the

 9  competitor, the person that might be seeking a patent.  He

10  said "any person" is not -- by case law, any person does not

11  include the United States because the United States is a

12  sovereign, it's not a person.

13        MR. JONES:  There are really two answers --

14        THE COURT:  There's two questions there.  Right.

15  Is "any person" really any person or just narrow persons?

16  And is "any person" the United States, which is a sovereign?

17        MR. JONES:  There's no distinction between any

18  person who has suffered an injury and any person who -- and

19  simply any person without any qualification.

20        To the extent that there's a distinction there, I

21  think that goes to Article III standing purposes.  And as we

22  pointed out again and again, and as the Supreme Court

23  decided in *Vermont* --

24        THE COURT:  The Supreme Court decision in *Vermont*

25  really isn't in your favor in regard to any person.

MR. JONES:  Well, that has to do with person

subject to suit who might be liable.  That really is talking

about "person" in the context of whether or not a statute

entity is a person.

THE COURT:  So you're saying that a person as a

defendant is different.  The word "person" has a different

meaning with defendant as it does in context of the

plaintiff.

MR. JONES:  That's the second point.

And the second point is the United States

certainly has the ability to the enforce its own statutes

and to enforce its statutes by appropriate civil litigation.

We didn't cite any of these because this came up in the very

last point of the briefing.  But the cases would include

primarily *In re Debs*, which was the classic Supreme Court

case involving the railroad strikes in Chicago more than 100

years ago, 158 U. S. 564, 1895, in which -- at page 584 the

Court says, "Every government entrusted by the very terms of

its being with powers and duties to be exercised and

discharged for the general welfare has a right to apply to

its own courts for any proper assistance in the exercise of

one and the discharge of the other.  And it is no sufficient

answer to its appeal to one of those courts that it has no

pecuniary interest in the matter.  The obligations which it

is under to promote the interest of law and to prevent the

wrongdoing of one resulting in injury to the general welfare
is often of itself sufficient to give it a standing in
court.  The Court can use a statement in a criminal statute
to give rise to a civil proceeding that the United States
can sue to enforce."

THE COURT:  Yes.  But that's not necessarily what
292(b) says.  You're just saying you can find a cause of
action out there under some statutory authority where
there's been a -- there's been an injury to the government
in the form of a statutory injury, and you criminally
prosecute it, you can also find some civil tool out there to
bring a lawsuit.

MR. JONES:  Yes.

THE COURT:  But that doesn't necessarily mean you
are using 292(b), especially when 292(b) does use the word
"person" versus "any person or the United States."

MR. JONES:  The United States is not going to be
an informer under 292(b).

THE COURT:  But you're now defining "person" as an
informer.  That person being only an informer.

MR. JONES:  An informer in classic qui tam
terminology, the informer, relator brings an action on his
own behalf but also on behalf of the king.  That does not
preclude the king from bringing his own action.

THE COURT:  No, I mean I agree with everything

1    you're saying except we're talking about the words in 292,

2    or 292(b).

3         MR. JONES:  And that is a classic qui tam

4    formulation of the structure and the language used in qui

5    tam legislation.

6         THE COURT:  Except I don't think the False Claims

7    Act just uses the word "any person."  I think the False

8    Claims Act does say the United States can bring this action

9    and in another subsection says, "and by the way, a relator

10   can bring it on behalf of United States."

11        MR. JONES:  That's correct, Your Honor.

12        THE COURT:  And you don't have that here.

13        MR. JONES:  That was added though in the 1986

14   amendments, so that the --

15        THE COURT:  That would be part -- they'd use that

16   to support them, say, yeah, Congress figured out in 1986 it

17   needs to be --

18        MR. JONES:  The 1986 amendments were designed to

19   limit what "any person" could be.  So there are a lot of

20   instances where if you're not an original source, if you

21   participated in the fraud, if you are an originator of the

22   fraud where you don't have the same rights as a

23   whistle-blower who is an original source.

24        THE COURT:  Right.  And you are clearly correct,

25   the FCA amendments of '86 were intended to narrow the

1    definition of "relator."

2         MR. JONES:  Yes.  That doesn't necessarily mean,

3    though, that a relator who doesn't meet those narrowing

4    conditions is somehow impermissibly a relator and prohibited

5    by the Constitution from being a qui tam action.  Just the

6    contrary.

7         THE COURT:  No, I agree.  I guess I find it

8    bizarre, but it has some strength to it, that what Mr. Baker

9    is saying is that "any person" is a human being, and he's

10   saying "human being" is narrowly defined but you don't have

11   to say that?  But "any person" doesn't include the United

12   States because the United States is a sovereign, and the

13   False Claims Act does say, at least in the case of a person

14   being sued as a defendant, a person is not a sovereign.

15        MR. JONES:  There are two answers.  To the extent

16   that the defendant relies on this 1866 case of *United States*

17   *v. Morris* where it said the United States could not be -- a

18   suit is brought in the name of the United States could not

19   be a person under 292(b), or what his predecessor

20   codification was.  It also excluded from that corporations

21   and we know that that's clearly wrong; wrong in 1866 and

22   it's wrong today.

23        THE COURT:  Right.  Because today corporations are

24   legal persons.

25        MR. JONES:  Yes.

 1          THE COURT:  But is a sovereign always a legal

 2  person?

 3          MR. JONES:  The sovereign is not trying to bring

 4  suit as any person under that statute.

 5          THE COURT:  Let me ask you:  You'll convince me if

 6  you say to me that under 292(a), in addition to criminal

 7  penalties, you can get the same civil penalty of $500 per

 8  instance, or can you only get that $500 under (b)?

 9          MR. JONES:  I don't think there's a distinction.

10  And the reason I don't think there's a distinction is

11  because under (b) is the qui tam nature; and the sovereign,

12  under the qui tam statutes has always had the right to

13  enforce its own statutes civilly as well criminally.  It can

14  bring an action for the imposition of the penalty.

15          It permits under (b) an informer relator to also

16  bring and share in the proceeds, but it's not that the

17  United States would bring an action and then only be

18  entitled to half the penalty.  If the United States brought

19  the action, it would be entitled to the entire amount.

20          THE COURT:  Let me ask Mr. Steve Baker.  Hold on.

21  Let me ask a question - go ahead.  You can conduct --

22          MR. JONES:  If I may, subsection (b) simply says

23  that any person may sue for the penalty in which one is the

24  person suing and the other is the United States.  That

25  should not be read in the context of history of qui tam

1 actions to prohibit the United States from bring its action

2 for the entire civil penalty.

3     THE COURT:  Okay.  And I've got 292 in front of

4 me, the whole thing, (a) and (b).  I understand what you're

5 saying; (b) only is talking about the relator and not the

6 remedies, nor penalties, and all the penalties are in

7 292(a).  So "any person" doesn't have to include the

8 sovereign because the sovereign is under 292(a), not under

9 292(b).

10     MR. JONES:  Precisely.  And the United States as a

11 sovereign has the right to bring, as a criminal case or as a

12 civil case, and it is not something that is differentiated

13 or (b) does not somehow limit the rights of the United

14 States that it has under (a).

15     THE COURT:  All right.  No.  I just -- without

16 having the statute in front of me I was confused as to where

17 the $500 for each offense was located, under (a) or (b).

18 But since it's under (a) that is empowering the United

19 States to act.

20     MR. JONES:  Absolutely, Your Honor.

21     THE COURT:  Okay.  All right.

22     Let me go back to when does the remedy that the

23 relator settles for in this case or any case become a bar to

24 criminal prosecution?  Are you saying -- does it never

25 become a bar to criminal prosecution?

1    MR. JONES:  No, Your Honor.  It obviously can bind

2    the United States.  And simply and elementary is if it takes

3    the case to judgment, the Court rules, or whether there's a

4    trial or whatever, there's a final judgment that's entered,

5    that binds the sovereign as well the relator.  It also binds

6    potentially other relators, those also are precluded.

7        THE COURT:  And it would bind you civilly and

8    criminally?  Or it depends?

9        MR. JONES:  It very much depends and I think

10   that's where the analysis under the Eighth Amendment comes.

11   It's certainly not going to be a double jeopardy.

12       THE COURT:  Well, it's double jeopardy in the

13   sense -- that it's a proportionality analysis, you and I

14   agree on that.

15       MR. JONES:  Yes.  And I think the Supreme Court

16   has basically repudiated its own analysis in *Halper* that it

17   really is a double jeopardy matter.  You can still bring the

18   action.  There's no prohibition against a criminal action

19   following on because that is not a second prosecution.

20       There may -- but because the Sixth Amendment

21   double jeopardy also applies to being twice punished, the

22   question then becomes whether or not there was a penalty

23   under the Eighth Amendment that would -- so that the penalty

24   sought in a criminal prosecution might be an excessive fine

25   or penalty.  I think that's the -- not my area of the law

precisely.

THE COURT:  When it becomes an excessive fine,
though --

MR. JONES:  Excuse me?

THE COURT:  When it becomes an excessive fine,
though, is that not --

MR. JONES:  That would be prohibited by the Eighth
Amendment.

THE COURT:  It would be prohibited just on the
excessive fines clause.  When it becomes a punitive fine,
but not unconstitutionally excessive --

MR. JONES:  Then the question is not whether the
United States can initiate a criminal prosecution, but
rather whether the judgment that it might get would make the
penalties in total already excessive.

THE COURT:  All right.

MR. JONES:  I think, Your Honor, the one point
that I wanted to sort of emphasize at the end here is one I
think we have made in our briefs to a large extent.  And I
don't want to belabor it, but I do want to say that I think
the defendant has, on their most recent brief,
mischaracterized the government's issue saying our principal
defense is that we have tools that we can use.  That's not
our principal defense.  Our principal argument is that the
history of these qui tam actions --

1    THE COURT:  That's Judge Brinkema's principal

2    argument, is the history is compelling here.

3    MR. JONES:  Yes.  And it's been recognized by the

4    Supreme Court.

5    Secondly, that there have been a number of Supreme

6    Court cases that have dealt with qui tam actions and in none

7    of them has there ever been a hint there's anything wrong

8    with qui tam procedures.  That there are several cases that

9    we cite by the Supreme Court in which they actually

10   recommend, or acknowledge, that Congress may validly adopt

11   qui tam actions.  These were all before the 1986 amendments

12   for the False Claims Act, you know, that instituted or

13   codified a number of these so-called controls that have been

14   litigated.

15   And that qui tam actions are not simply -- it's

16   not that these qui tam actions are old or simply historical,

17   it's an artifact that's long ago and since has been

18   abandoned.  The Congress has seen fit not only to adopt some

19   fairly modern qui tam statutes, but they have also, then, as

20   we know, done the 1986 amendments, and two days ago

21   President Obama signed into law the new amendments to the

22   False Claims Act, once again emphasizing how that its use is

23   there to combat fraud and it's such a useful tool in the

24   government's arsenal.  So it's something that is continuing

25   today.

1          And finally --

2          THE COURT:  I mean, your historical argument is

3   compelling but their response is the False Claim Act keeps

4   getting refined so it's a preservation of the tool.

5          Let me ask you the question that I hesitated a

6   moment ago when I was thinking about what I specifically

7   wanted to ask you.  That is, let's go back to that context

8   of if you had collected an excessive fine or where you have

9   the relator's settlement is punitive, where are your

10  controls on that to come back and make sure that you're not

11  excluded from doing what you want to do in the form of a

12  criminal prosecution or additional civil relief?

13         MR. JONES:  Well, I think we have to have notice.

14  And the statute provides for notice under Section 290.  The

15  hypothetical you had raised last time we were here --

16         THE COURT:  Was the scam.  Everything happens in

17  24 hours.  There's months of secret negotiation and then

18  everything is filed in court right away.

19         MR. JONES:  I think in those instances it's

20  clearly a fraud on the Court, as well as a fraud on the

21  United States.  And certainly United States interests have

22  not been addressed in that kind of a situation.  Those -- in

23  that sort of a situation the whole effort is to deprive the

24  United States of any input.  And in those instances I think

25  what the United States could, under Rule 60(d)(3) come into

court, file and say -- seek to have its rights heard.

THE COURT:  All right.  How are you getting notice on the fairly negotiated, openly negotiated settlement?  Are you getting notice because the PTO gets notice?

MR. JONES:  Well, that is the statutory mechanism for control.

THE COURT:  Is that real notice?

MR. JONES:  Well, I think part --

THE COURT:  It might be legal notice.

MR. JONES:  Yes.

THE COURT:  It might not be real notice.

MR. JONES:  That may be.  And it may be as in lots of forfeiture actions against property, you know, where you publish in the newspapers:  I mean there are all kinds of rules for giving notice that may or may not be effective or actual notice.

But here there is, in fact, notice that goes to the PTO, and to the extent the United States has administrative handling of that notice, that's something that the government can address internally.  It's not something that the Court should find is inadequate notice.

What I'm saying, though, is once the government does have notice, then it has its own rights.  And the Court may have an obligation beyond -- if this is happening very quickly, maybe not on the same day but shortly after the

1   filing of the suit before the United States gets its notice

2   under 290, then under Rule 19, I think where the rights and

3   obligations of the United States may be impacted by any

4   settlement, I think the Court has its own separate

5   obligation as an indispensable party matter to invite the

6   United States in to comment on the terms of the settlement.

7           THE COURT:  So you might have had someone like me

8   who used to litigate False Claims Acts, and I do invite the

9   government in here.  But what about the vast majority of

10  Article IIIs that did not litigate False Claims Acts cases

11  when they are in their prior life as a practicing attorney?

12          MR. JONES:  I appreciate Your Honor doing that,

13  but I think it's merely the application of the rule.

14          I think sometimes even practically any judge in

15  any court where the parties are coming in and knowing that

16  half of the money is going to the United States and they are

17  trying to, you know, give the bum's rush to get a settlement

18  approved quickly, that in those instances the Court would

19  invite the United States in.  I think there is an obligation

20  to do so under Rule 19.

21          THE COURT:  I certainly understand what you're

22  saying is the Court should do that, but it's kind of hard

23  for me to accept this part -- accept that as part of your

24  control mechanism where you're saying the judiciary has the

25  legal obligation to put us on notice for control.

1        MR. JONES:  I'm talking about the mechanism I

2   think would work.  In the absence of that, as there would be

3   in the absence -- that would not be in the strict terms of

4   the hypothetical you originally raised.

5        THE COURT:  I was thinking of the worst possible

6   scenario.

7        MR. JONES:  And it may be -- I mean we're on a

8   kind of continuum for the very worst, where the United

9   States in this case, for instance, we know exactly what's

10  going on.  But there could be stages along the way where we

11  do not know of what is going on and what I'm saying

12  essentially is that we think that the government has an

13  interest in these cases by virtue of the -- its half share

14  on the civil actions brought under qui tam cases.  And it's

15  got -- to the extent that it may or may not be bound by

16  double jeopardy or excessive fines, that it has a right to

17  have its interests heard by the government, by the courts.

18        And that it can -- it has the tools to do that

19  through 28 U.S.C. 517, we can come into court and make our

20  case -- through Rule 60(d)(3) to the extent that it's been a

21  fraud on the Court because the United States interests have

22  not been addressed, and, you know, perhaps at some point we

23  disagree with what a relator is doing in a particular case,

24  and our views diverge so that the relator is not adequately

25  representing our interest.  In those instances, we have a

right to come in and intervene and become a party to the
case.

And that -- that in those circumstances, you know,
we don't have absolute control, but we have sufficient
control to make sure that our views are addressed to the
Court.

And, you know, in *Morrison* it was -- the
sufficient control was not that the Attorney General could
remove the prosecutor, but he could remove him for good
cause.  He has to make the showing of good cause to the
Court.  He can't dismiss the indictment.  The indictment
will go forward even if a new independent prosecutor were
appointed.  It's not an absolute control that is required
under Article II jurisprudence.

THE COURT:  That's the argument the plaintiff
makes directly, that *Morrison v. Olson* delved into the most
important authority of the Executive, and that's actually
criminally prosecute someone, and that was still deemed
constitutional even when you had a judicial panel
supervising the investigation and prosecution.

MR. JONES:  That's right, Your Honor.

THE COURT:  It's a really fascinating case to look
at that Justice Scalia was the one dissenter and that it was
a two-to-one vote at the D.C. circuit, which flipped it the
other way.  The history of that is fascinating.  In

1    Washington, the Take Care Clause battles are much more

2    pertinent than they are down here in the hinterlands.

3              MR. JONES:  And I think the other point, I guess,

4    is that the points we've made in our brief about the

5    hypotheticals here.  We're really talking about a case being

6    decided -- whether or not the statute is constitutional on

7    its face or not.  We agree with the plaintiff's, relator's

8    view on that, and that this statute is constitutional on its

9    face.  All it's done so far on the facts here is allowed any

10   person, relator, to file a case, and that's where we are,

11   and the United States is going to share in the recovery.  As

12   applied, that's what's going on in this factual situation

13   here.

14             You know, it may be that there might be at some

15   point in some case that where it would be applied where we

16   might try to assert our rights and think -- where our

17   position was rejected, there may be some instance as applied

18   in that case there may be some problem with

19   constitutionality, but that's not the case here.  And I

20   think that in the hypothetical that the Court posited, we've

21   tried to give you an idea of the hypothetical things that we

22   might do in such a situation.

23             THE COURT:  One final question:  Can the United

24   States, through Congress, through -- assign or retain

25   private prosecutors for a criminal prosecution?

1          MR. JONES:  There --

2          THE COURT:  Because you could argue that this is

3     effectively -- if it's an excessive fine, that is quasi

4     punitive or is absolutely punitive, because this Eighth

5     Amendment, that deals with punitive authority.

6          MR. JONES:  Again, I think that may be on an

7     as-applied basis.  Clearly where the Court has discretion in

8     setting a penalty of up to $500, it may not rise --

9          THE COURT:  Just in a generic sense, though,

10    outside of 292.  It is -- would you accept the fact that it

11    is entirely constitutional for the Executive to empower

12    private prosecutors?

13         MR. JONES:  Well, it depends.

14         THE COURT:  I mean in the situation, *Morrison v.*

15    *Olson*, the Supreme Court said yes, and that's the way the

16    Congress in that statute set it up.

17         But that's not -- independent counsel is not a

18    private prosecutor.  Isn't the independent counsel -- well,

19    actually, you're right.  Maybe the independent counsel is

20    not paid as a salaried employee.  I know they made officer

21    argument -- executive officer of the United States argument,

22    but the independent counsel is on a contract basis, isn't

23    it?

24         MR. JONES:  Your Honor, I'm afraid that I'm not

25    sure that I know the answer to that, and whether or not an

1    independent prosecutor was paid.

2         THE COURT:  I think Judge Starr, since he's kind

3    of the model example, Judge Starr had private clients at the

4    time he was --

5         MR. JONES:  I think that's an unusual case.

6         THE COURT:  He's not an officer of the United

7    States, he's a contractor.

8         MR. JONES:  You could be right about that.  I'm

9    just not familiar with that enough to know.

10        THE COURT:  I'm not sure either.  But I do, I

11   think maybe independent counsel have -- or special counsel

12   have been contractors because they carry private clients at

13   the same time.

14        MR. JONES:  Now, that you mention that I think

15   that may be the case.  Again, I really don't know the answer

16   to that.

17        THE COURT:  Although -- well, that gets back to

18   special counsel could be a private prosecutor.  Yeah,

19   because there is somewhat of an issue here.  If this is

20   punitive, then can it still be -- they would take the

21   position that if it's punitive, you could never have a

22   private party acting and getting paid on either a commission

23   basis or on an hourly basis.

24        MR. JONES:  ** Tjos os clearly Rule 292(b) is

25   civil matter.

1        THE COURT:  Yes.  But that -- but are you

2   saying -- you agree with Judge Brinkema, then, that because

3   it's civil, that makes a huge distinction here, and that

4   these "take care" issues never kick in.

5        MR. JONES:  I'm not sure it makes a huge

6   distinction.

7        THE COURT:  That's one of the three bases for her

8   ruling, isn't it?  History --

9        MR. JONES:  I think it makes a distinction.  I

10  think it makes a distinction.

11       But I think the important points are that these

12  qui tam actions have been around for hundreds of years, they

13  have been used for hundreds of years.  There's never been a

14  problem with them under Article II of the Constitution.  The

15  Supreme Court has counseled that those can be used and has

16  counseled further that if defendants don't like it they can

17  go to Congress to change it.  And that in that context these

18  civil actions -- and they were civil actions -- are within

19  the bounds of the Constitution and within the bounds of the

20  separation of powers to go forward.

21       And there's nothing that the defendants are

22  pointing where any court, at any level, has ever said that

23  they are outside of those bounds, with the exception of the

24  Fifth Circuit panel decision in *Riley* where two judges of

25  the Fifth Circuit said that it was, and the Fifth Circuit --

I mean the Fifth Circuit then en banc voted 11 to 2 to
reverse that.

It's -- and the other point about *Riley* is that
the -- they went on ahead and discussed the elements of
*Morrison* because that had been raised by those two judges in
the original panel decision, they really say that the
history as outlined in *Vermont Agency* that was conclusive as
to Article III was equally conclusive as to the Article II
issues.  And there's just nothing in the jurisprudence of
230 years of qui tam litigation that points to it being an
unconstitutional mechanism.

The one other point I guess I meant to mention --
it's not a major point at all -- but to the extent that
we're talking about the False Claims Act having been amended
in 1986, and amended again two days ago, that is often --
that comes about because the False Claims Act has been used
more frequently.

There are thousands of cases that are out there,
and it raises more individual particular kinds of issues
that the courts have had to deal with over the time it's
been in wide use.

Quite frankly, the 292 section has a long history
but it's a fairly sporadic history.  There aren't very many
cases out there.  There have been quite a few now where the
constitutional issue has been raised, got *Solo Cup* and this

1   one, *Pequignot*, and *Brooks Brothers*, but those are all

2   recent phenomena because the defendants have come up with

3   this idea that maybe these qui tam things violate the

4   Constitution.

5           THE COURT:  Well, I think it's also, the

6   plaintiffs have discovered qui tam, that they --

7           MR. JONES:  I'm sure you're right.

8           THE COURT:  But that's neither here nor there.  I

9   mean, the statute's been around for 130-some-odd years.

10          MR. JONES:  But it hasn't enjoyed wide use.  And I

11  think that, as much as anything else, explains why it is

12  still in essentially pristine qui tam condition as those qui

13  tam statutes have been for hundreds of years.

14          THE COURT:  All right.  Thank you, Mr. Jones.

15          Mr. Baker, very quickly go back to what you're

16  talking about with regard to why either Article II or

17  Article III is facially -- Article II, Article III issues.

18          MR. BAKER:  Let me -- as to Article II, I want to

19  clarify my previous position.  The discussion here and Your

20  Honor's question has provoked further thinking on my part.

21          As to Article II, even in a case of a relator that

22  has suffered personal injury, a competitor we would still

23  have an Article II facial unconstitutionality problem,

24  because a portion of the relief that the relator would be

25  seeking would be for the government.  In other words, the

relator, even when he's been injured, is seeking relief, not only for his personal injury but the government's sovereign injury; and, therefore, I do believe, in fact, that the Article II issue here is a question of facial unconstitutionality. That even in those instances where someone has suffered actual injury, 292(b) allows for the recovery for both that person and the government's interest, and it's the suing for the government's interest that also triggers the Article II questions.

That that's why under the False Claims Act there's a question regarding Article II every Court of Appeals has looked at and examined because the False Claims Act relator is suing not only for proprietary interest of the government but because also the government's sovereign interest that Article II is implicated.

THE COURT: They don't use those words.

MR. BAKER: I understand, Your Honor. I'm providing somewhat of a foundational predicate analysis as to why they made that analysis. They assume there's a governmental interest, therefore they have to do the Article II analysis.

The False Claims Act is fundamentally different from 292(b) because there's a whole series of controls in the False Claims Act.

I want to quote, if I could, Your Honor, what the

1  government said to the Supreme Court last month, March 31st.

2  "Once a relator has commenced his action -- " this is under

3  the False Claims Act -- "Once a relator commenced his

4  action, the government was powerless to interfere with the

5  prosecution although the government's consent was a

6  prerequisite to the dismissal of the suit.  To increase the

7  government's level of control over FCA litigation, Congress

8  amended the Act in 1943 to provide the controls."

9          The government conceded in the Supreme Court.

10          THE COURT:  That's not exactly what they said.

11  They said to increase their level versus to say to create

12  the first controls.  Right?

13          MR. BAKER:  Well, the government said that the

14  government was powerless.  Powerless to interfere with the

15  case.  And if the government was powerless to interfere with

16  the case before 1943, before those statutory amendments, why

17  isn't the government powerless today?

18          I'll turn now to the 292(b) person question.

19          The government can bring an action under 292(a),

20  bring a criminal action under 292(a); it cannot bring an

21  action under 292(b) because the government is not a person.

22          THE COURT:  But Mr. Jones is saying the government

23  doesn't need to bring it under 292(b) because it's bringing

24  it under 292(a) and every remedy available under (b) --

25  well, (b)'s remedies come from (a).

1        MR. BAKER:  Well, Your Honor, 292(a) and (b).  (b)

2   is for the private person.  (a) is for the government.

3        THE COURT:  Right.

4        MR. BAKER:  And when the (b) private person is

5   bringing that private litigation, it's outside the

6   government's control, and the results of that litigation are

7   binding on the government.  Therefore, it's an exercise in

8   contravention of Article II.

9        THE COURT:  Well, I mean, that's if you reject

10  517, 518, 60(b) giving them control.

11       MR. BAKER:  Let's turn to that, Your Honor.

12       Notice to the Court that clerks provide, nothing

13  in the statute requires that the clerk notify the government

14  that it's a Section 292(b) case.  It just says a patent

15  case.

16       THE COURT:  Right.

17       MR. BAKER:  So there's no statutory obligation

18  that the government be notified that, in fact, we have a

19  292(b) case.  It just says a patent case.  And as Your Honor

20  knows, 99 percent of the cases that are brought involve

21  questions of infringement and validity.  99.9 percent.  Only

22  a handful involve 292(b).  And the PTO doesn't go about

23  distinguishing between those two.

24       THE COURT:  That's an interesting issue.  Is it

25  real notice or is it meaningless notice?  But -- let me

1  rephrase that.  There's clearly a legal requirement that the

2  PTO receive notice about --

3          MR. BAKER:  Of a patent lawsuit.

4          THE COURT:  -- of a patent lawsuit.

5          Is it, as Mr. Jones says, isn't that really the

6  government's administrative problem that they aren't paying

7  attention to the notice?

8          MR. BAKER:  It's a statutory obligation to provide

9  notice of a patent suit, but there's no obligation to

10  provide notice of what kind of suit.  I think the clerks are

11  in compliance we want statutes now, because the statute

12  doesn't require it indicate what kind of suit that it be

13  provided to the government.  Even if the government is

14  somehow able to ascertain notice, there's no mechanism under

15  292(b) for the government to stop a settlement -- first, the

16  government can't intervene because it's not a person.

17          THE COURT:  Well, the first part of your argument

18  that 292 is facially invalid because there's no notice, that

19  does apply 100 percent of the time.

20          MR. BAKER:  That's right.

21          THE COURT:  If you exclude the notice of the PTO.

22          But the second part of your argument doesn't occur

23  100 percent of the time.  You're saying there's no control

24  whatsoever, but they are here.  For example, they are here

25  today and they are here because I gave them notice.

1    MR. BAKER:  Your Honor, they are in the case for

2  the limited purpose of defending the constitutionality of

3  the statute.  It's striking that the Court has taken not

4  even a position as to whether Your Honor should reach the

5  12(b)(6) question first as opposed to constitutionality.

6  They said, "We're not going to touch that.  It goes to the

7  prosecution of the case and all we care about is defending

8  the statute."

9    But I submit they have no authority to take any

10  position.  The Court should not listen to the government

11  with respect to any aspect of a --

12    THE COURT:  But the point being is that we aren't

13  there.  They are not taking the position that they want more

14  control but they are here.

15    Your first part of your argument that the notice

16  is insufficient does apply hundred percent of the time.  But

17  once they are here, however they get here, then you have to

18  deal with what they are saying.  They saying, "We don't want

19  more control.  We're happy with what we've got."

20    MR. BAKER:  Hundred percent of the time they are

21  not a person.

22    THE COURT:  Hundred percent of the time they are

23  not a person.

24    MR. BAKER:  But they are not a person, they have

25  no rights whatsoever in a 292(b) action.  They can't do a

1    thing.

2            THE COURT:  What is 292(b) if there isn't a

3    292(a)?  Doesn't 292(b) assume 292(a)?

4            MR. BAKER:  They are completely different avenues,

5    Your Honor, 292(a) they can bring a criminal action.

6            THE COURT:  Well, 292(a), they can bring a

7    criminal or civil action.

8            MR. BAKER:  No.  The courts have consistently

9    construed 292(a) as criminal offense.

10           THE COURT:  Right.  But it doesn't mean it's also

11   not allowed for the civil remedy.  "Shall be fined not more

12   than $500 for every such offense."  That's what's the

13   penalty, and it doesn't say -- it doesn't say that has to be

14   done in a criminal mechanism.

15           MR. BAKER:  Every court that has construed --

16   every court that has looked at this has construed 292(a) as

17   a criminal provision.  In fact, the reviser's notes in the

18   code say it's a criminal provision.

19           There's a bifurcation:  292(a) is criminal, 292(b)

20   is civil.  And the government is not a person.  Now, once a

21   person in the form of Mr. Harrington brings an action, that

22   train is going down the tracks and the government can't do a

23   thing about it.  Their tools simply don't work because they

24   are not a person.  They have no cause of action.

25           THE COURT:  Well, their tools on the 292(b) can't

1    do anything about it.  They are saying all their other tools

2    can, their 517, 518.  But they are also -- I have been in

3    the world of criminal law for a long time, and -- that you

4    can bring -- frequently bring civil actions when you have

5    criminal authority.  And what's particularly unique here is

6    you don't have "shall be punished for a year, in excess of a

7    year, or less than a year, fined or both."  It just says

8    "more than $500 for every such offense."

9              You're arguing that for the government to win

10   under 292(a), it has to prove beyond a reasonable doubt;

11   that under 292(b) the relator only has to prove by a

12   preponderance of the evidence?  That's the essence of what

13   you're arguing.  You have to when you say it's exclusively

14   criminal.

15             MR. BAKER:  Clear and convincing under 292(b).

16             THE COURT:  Okay.

17             MR. BAKER:  At least clear and convincing.  It's

18   not -- at least clear and convincing --

19             THE COURT:  It's not beyond a reasonable doubt.

20             MR. BAKER:  I have to think about that.  I don't

21   want to make a concession on that point.

22             It may well be.  It may well be that 292(a) is

23   beyond a reasonable doubt for the government because it's a

24   criminal provision, and 292(b) is at least clear and

25   convincing evidence.

1          But, Your Honor, I would point out, the False

2    Claims Act, the government just can't out of the air create

3    rights of action, bring civil actions.  The False Claims Act

4    says, Section 3730 of Title 31, "The Attorney General may

5    bring a civil action under this section against a person."

6    There's no such provision under Section 292(b).  292(b) says

7    only a person can bring an action.  And the Court in 1866 in

8    Tennessee said the United States cannot bring an action.

9          THE COURT:  Under 292(b).

10         MR. BAKER:  Under 292(b).

11         THE COURT:  Because they are bringing it under

12   292(a).

13         MR. BAKER:  They can bring a 292(a).  So what you

14   might have is a race to the courthouse.  Mr. Harrington

15   might bring his action and Mr. Jones might bring his

16   criminal action, and whoever gets the judgment first, that's

17   it.  But that's what Congress created, and that's what's so

18   unconstitutional because Mr. Harrington's lawsuit can

19   interfere with the government's criminal prosecution.

20         THE COURT:  But once again, they are saying that

21   theory, you can.  Everything you're saying -- I mean their

22   argument is that it is not -- everything you're arguing is

23   not facially unconstitutional.  You're coming up with all

24   the scenarios.  Only one -- but your starting point that the

25   notice here is insufficient is universal; that does apply

1  100 percent of the time.  Whether the Court agrees with it

2  or not is one thing, but it is hundred percent of the -- the

3  only up-front notice is to the PTO.

4         MR. BAKER:  Hundred percent of the time because

5  the government is not a person, it cannot intervene in a

6  292(b) action.  It cannot even intervene because it has no

7  cause of action under 292(b).  It can't block a settlement.

8  And if we were to enter into a settlement --

9         THE COURT:  But they disagree with you on that.

10  They say 517, 518 -- 60(b) after the fact, but 517, 518

11  during it -- that's where you disagree on the interpretation

12  of the statute.

13         MR. BAKER:  Your Honor, the *City of Philadelphia*

14  case we cited, a district court -- in that case the

15  government came in, the Justice Department said, "We're

16  going to sue and try to enforce the Fourteenth Amendment

17  rights of the citizens of Philadelphia that were violated by

18  the police department --" it was a 1983 action.  The

19  government asserted it could enforce the Fourteenth

20  Amendment rights of individuals in the city of Philadelphia.

21  The district court tossed them out, and it was affirmed by

22  the Third Circuit.  Judge Alderson wrote a --

23         THE COURT:  Because there wasn't a 292(a)

24  provision there.  That's the thing.

25         MR. BAKER:  That would be a separate action.  It

1    wasn't a civil lawsuit.  It would be a different action

2    brought by the government.

3         In the absence of a provision for the government

4    to bring a lawsuit, it just can't do it willy-nilly under

5    292(b)?  The only people that can bring it are the private

6    relators; and the government has no ability to get notice,

7    it can't intervene and it can't block a settlement.  And if

8    we entered into a settlement today with Mr. Harrington --

9         THE COURT:  Your whole argument presupposes that

10   292 is really two entirely different statutes with entirely

11   different schemes.  There's 292(a), there's 292(b).  If

12   that's true, then 292(b) on its face should stand

13   independent.  You should be able to read it -- read all of

14   the elements and it would explain it.  But 292(b)

15   necessarily requires you to apply 292(a).

16        MR. BAKER:  The provisions overlap, but they don't

17   overlap as to the cause of action.  Each create a separate

18   cause of action.

19        292(a) creates a cause of action, criminal cause

20   of action for the government.  Section 292(b) creates a

21   civil cause of action for people like Mr. Harrington based

22   upon the same elements that are in the Section 292(a)

23   action, and they proceed down parallel tracks.  If

24   Mr. Harrington goes to the judgment first, he get's --

25   that's claim provision.

1        THE COURT:  That's such -- just is such a narrow

2   reading of 292(b) that, I mean it --

3        MR. BAKER:  As the Court said in *Vermont Agency*

4   the usual ordinary use of the word "person" doesn't include

5   sovereign.

6        THE COURT:  Right.  But the point -- what I was

7   missing was I was confusing -- because I just didn't have

8   292, whole text in front of me -- I was thinking that the

9   $500 offense was set forth in (a) and (b) separately, but

10  it's not.  It's set forth in (a), and it's the total

11  punitive effect and remedial effect.

12       MR. BAKER:  It's two parallel tracks and whoever

13  gets there first gets the pot of gold.

14       THE COURT:  But somehow or other I think Congress

15  would have said that, to me.  Congress would have said

16  292(b) bars a 292(a) action or something.  It just seems

17  that that's such a powerful argument, that Congress deprived

18  the U. S. Government of its 292(a) authority by allowing a

19  292(b) action, which doesn't make any sense.

20       Why would they have this lengthy 292(a) subsection

21  that's three full paragraphs, and then they have one little

22  sentence in 292(b) "Any person may sue for the penalty in

23  which event one would go to the person suing the other to

24  the use of the United States," just seems they would have

25  written a whole other provision and said, "We have over here

1  292(b), and here's what you have to do with 292(b).  And by

2  the way, it's only for a person, not for the United States."

3         Anything else?

4         MR. BAKER:  Your Honor, the point about -- we keep

5  hearing this doesn't really matter, there's no conflict,

6  there's no Article II problem until the government actually

7  tries to assert control and is unable to.  That cannot be

8  right.

9         So if that was the case, there was no problem,

10  Article II issue in *Morrison v. Olson*.  In *Morrison v. Olson*

11  there was no contest.  The government was not trying to

12  wrest control back from Ms. Morrison, who was the

13  independent counsel.  She was doing her thing.  The

14  government had not interfered with that.  The government was

15  defending the constitutionality of the statute the way it's

16  doing here.

17         THE COURT:  Ted Olson didn't like getting a

18  subpoena.  But that's where that actually came from.  The

19  future Solicitor General of the United States didn't like

20  getting a subpoena.

21         MR. BAKER:  But the Court didn't say, "Oh, We

22  don't get to issue -- " this is what the government says.

23  "don't even get to the Article II question because it's not

24  a live question until we actually come toe-to-toe with

25  Mr. Harrington about some issue."

1          THE COURT:  No.  The private party brought suit.

2     A private party who was actually aggrieved said, "I don't

3     want to respond to a subpoena brought by an improper

4     constitutional authority."

5          MR. BAKER:  We, as a private party, CIBA, has been

6     sued by Mr. Harrington and we don't want to be the subject

7     of his suit because there's no control.  Ted Olson was

8     saying this subpoena against me is invalid because

9     Ms. Morrison is not controlled by the government.  We're

10    saying this suit against us is invalid because Mr. Jones and

11    his colleagues are not controlling the litigation.  The same

12    principle applies for the same reason that the Court in

13    *Olson* had to reach the Article II issue.

14         THE COURT:  Well, now, I agree with you that the

15    Court -- the Supreme Court had to reach it because the

16    district court held that they could reach it.  Isn't that

17    right?  Not district court -- the district court -- let's

18    see if I get the order of this right.

19         The district court said Office of Independent

20    Counsel is constitutional.  And because it was a -- that was

21    the final judgment because it was a subpoena -- let me

22    finish and then you can tell me where I'm wrong -- because

23    it was in the context of I guess of a grand jury subpoena --

24    it wasn't a trial subpoena, a grand jury subpoena -- in the

25    context of a grand jury subpoena.  So that was a final

1  judgment of the district court.  And then it went

2  immediately to the D. C. Circuit.  The D. C. Circuit then

3  said two-to-one that it's unconstitutional, and then it went

4  to the Supreme Court.  We don't know if the Supreme Court

5  would have ever addressed the issue if the D. C. Circuit

6  hadn't addressed the issue.

7  MR. BAKER:  If Mr. Jones's argument had any

8  validity on this point, the Supreme Court in *Olson* would

9  have held it was improper to reach the question -- we don't

10  need to -- it was improper for the D. C. Circuit below to

11  reach the Article II question because there's no conflict

12  here because the government isn't, at this moment in time,

13  in conflict with Ms. Morrison regarding this particular

14  subpoena.

15  So if and when there's a conflict down the line,

16  at that point the Article II issue is ripe for review --

17  there's no argument here.  It's not ripe for review because

18  there's no conflict between the government and

19  Mr. Harrington.  There wasn't a conflict in *Olson*.  The

20  Court had to reach it because Ted Olson's argument was the

21  very fact she's pursuing this action without any control by

22  the Justice Department means the statute is

23  unconstitutional.  Article II.  The same applies here.

24  Because Mr. Harrington is a freelancer and not controlled by

25  the Justice Department, the Article II issue can't be

avoided.

THE COURT: All right. You do raise a good point. I think that's the correct procedural history of that case.

I'm really quickly going to go back to which one of the two of you want to respond to that because that's a good procedure point.

MR. JONES: Just on that last issue. There's was a divergence of opinion between the United States and Morrison. United States took the position that the independent counsel statute was unconstitutional.

We were, the United States, was also the one that argued in the Court of Appeals -- if I'm not mistaken we got special permission from the Supreme Court not to defend the statute -- but there was a divergence of opinion between Morrison, the independent counsel, and the United States.

THE COURT: Okay.

MR. JONES: That's the distinction.

THE COURT: That's critical. Mr. Baker.

MR. BAKER: As to the actual prosecution of her action, the government was taking the position apparently the statute is unconstitutional broadly speaking, but the government wasn't contesting what she was doing.

MR. JONES: But the subpoena was not enforceable. There was a divergence of interest between the United States and the independent counsel much as I'm suggesting that

1    there -- if there were a divergence of opinion between the

2    United States and the relator, that the United States

3    would -- in those kind of situations the Court would have to

4    take into account who controls.

5          THE COURT:  Right.  Well, that was important to

6    clarify for the Court, because that goes back to whether the

7    government's raising the issue of control or not here, and

8    the government is saying it's not raising the issue of

9    control.

10          All right, Mr. Baker.  Anything else?

11          MR. BAKER:  I don't think so, Your Honor.

12          THE COURT:  All right.  I really appreciate the

13    incredibly hard work counsel has done today.

14          I know you want to go to lunch.  I'm not finished

15    with you.  We'll recess for 15 minutes and I'll be back at

16    1:00 and I'll either give you an answer or tell you I'm not

17    giving you an answer and take it under advisement.

18          (Recess taken 12:44 p.m. and resumed at 1:26 p.m.)

19          THE COURT:  I apologize.  I always underestimate

20    the amount of time it's going to take me to think through

21    all the arguments and sit down with my clerks and come to an

22    answer.

23          Frequently after hearing such extraordinary

24    argument like I heard this morning, we'll take the issues

25    under advisement.  However, since we have spent a tremendous

1    amount of time, the parties as well the Court, in going

2    through the cases here, and we have had extensive oral

3    argument, the Court believes we can issue an oral ruling,

4    and the Court will now do that.

5         After reviewing the extensive briefing in this

6    case, and having heard oral argument on two occasions, the

7    Court is prepared to issue its oral order on the defendant's

8    Motion to Dismiss.

9         As a preliminary matter, the Court holds that

10   Title 35, U. S. Code, Section 292(b), although providing for

11   a penalty, is a civil statute.  The case law makes this

12   abundantly clear.  See e.g. *Dowling*, D-O-W-L-I-N-G, v.

13   *United States*, 473 U. S. 207, pinpoint cite 227, footnote

14   19, (1985); *Clontech Laboratories, Inc. v. Invitrogen Corp*,

15   406 F.3d, 1347, pinpoint 1352, (Federal Circuit 2005);

16   *Filmon Process Corp v. Spell-Right Corp*, 404 F.2d 1351,

17   pinpoint 1355, (D. C. Circuit 1668.)

18        The Court therefore rejects defendant's subject

19   matter jurisdiction and venue arguments on this issue.  The

20   Court does not need to address whether Section 292(a) is a

21   criminal or civil provision as we are here under Section

22   292(b).

23        Now, the Court similarly rejects the defendant's

24   Rule 12(b)(7) challenge noting the complete lack of case law

25   support for the proposition that the government must be

joined as a necessary party to make a false marketing case.

Moving on to standing under Article III, the Court holds the plaintiff has standing to pursue this litigation. In doing so, the Court rejects the defendant's proposed dichotomy between the United States Government's proprietary and sovereign interests. This dichotomy is of academic interest, and may be the subject of future Supreme Court case law; it is at present insufficiently defined for this Court to hold that Congress may not assign a qui tam cause of action to a private individual when the United States Government has suffered injury to a sovereign interest.

In this regard, the Court is in accord with Judge Brinkema's recent decision in *Pequignot v. Solo Cup Company*, 2009 West Law 874488, Eastern District of Virginia March 27th, 2009.

Now, as to whether Section 292(b) violates Article II of the Constitution, the Court largely accepts Judge Brinkema's analysis regarding the Take Care Clause of the Constitution.

The Court believes that the historical background of qui tam statutes and the false marking statute make it highly unlikely that 35 U.S.C., Section 292(b) is unconstitutional. Nevertheless, historic principles are not entirely sufficient, especially considering the recent developments in qui tam law and the False Claims Act, namely

the *Morrison* standard of sufficient control and its

development in the circuit courts.

In applying *Morrison*, the Court declines to follow

the Fifth Circuit and Judge Brinkema in holding that the

sufficient control standard does not apply in civil context,

this criminal versus civil distinction being absent from the

text of the Constitution.  And the Court references

*Saikrishna Prakash*, in the Law Review article, "The Chief

Prosecutor" found at 73 George Washington Law Review 521,

pinpoint cite page 540, 2005.

Supreme Court case law from the Eight Amendment

context is illustrative on this point.  In *United States v.*

*Bajakajian*, the Court noted the constitutionally meaningful

distinction for what constituted a "fine" is not whether an

action is styled as civil or criminal, but whether it is

remedial or punitive.  524 U. S. 321, pinpoint cite 331,

Note 6, 1998.

Thus, the high court stated that a forfeiture,

regardless of its label as a civil in rem or a criminal in

personam action, is a fine, "if it constitutes punishment,

even in part."

Despite being a civil statute, Section 292(b) is

punitive on its face.  It expressly calls for the offender

to be fined, and states anyone may sue for the penalty.  It

also includes a requirement scienter -- I should say that

these requirements are found in 292(a), obviously are explicitly adopted in 292(b) by the fact that 292(b) can only be proven through the elements of 292(a).

But as the Court said, it also includes a requirement of scienter, the intent to deceive the public, the hallmark of a punitive statute. And the Court cites page 328 of the *Bajakajian* decision. Thus because of Section 292's punitive nature, the Court believes *Morrison*'s sufficient control standard is applicable.

Having reviewed the *Morrison* standard and the circuit court case law applying it to the False Claims Act, the Court now holds that the United States Government, as an intervenor in this case, has demonstrated that the Executive retained sufficient control over a false marking case to ensure that the laws are faithfully executed.

The Court references the government's broad right to be heard in any case in which it has an interest pursuant to 28 U.S.C., Sections 517 and 518, as well as the government's right to intervene as an interested party under the Federal Rules of Civil Procedure.

It is the government's notice of a false marking action that has given the Court the most pause. But the Court believes that the notice procedure for all patent cases, as well as the government's notification by receipt of the funds after the lawsuit, and its legal options for

setting aside any previously obtained judgment, are
sufficient to pass constitutional muster.

Accordingly, the Court holds that 35 U.S.C.,
Section 292(b) does not violate the Take Care Clause of the
United States Constitution.

In addition, the Court holds that Section 292(b)
does not violate the Appointments Clause of the
Constitution. Put simply, Section 292(b) does not violate
the Appointments Clause because it does not appoint an
officer of the United States. As the Supreme Court has
stated, the term "officer of the United States," embraces
the ideas of tenure, duration, emolument and duties that are
permanent, not occasional or temporary." *United States v*.
*Germaine*, 99 U. S. page 508, pinpoint cite pages 511 and
512, 1878.

In contrast, a qui tam plaintiff is more akin to
an agent, or as the Supreme Court stated in *Vermont Agency*,
"an 'assignee' [receiving a] partial assignment of the
government's damages claim." 529 U. S. 773. Therefore, 35
U.S.C. 292(b) does not violate the Appointments Clause.

Finally, there is the issue of defendant's
12(b)(6) motion.

Now, if the Court had held Section 292(b)
Unconstitutional under Article II, it would have had to
first address the Rule 12(b)(6) motion. But since the Court

holds 292(b) constitutional under Article II, it can now

defer final ruling on the 12(b)(6) motion.

The Court wants to note, though, the defendant's

Rule 12(b)(6) motion has two aspects, and the Court will

address the first aspect of the 12(b)(6) motion.

The Court declines to adopt defendant's argument

that Rules 9(a) and 9(b) apply to the false marking statute.

No court has applied these rules to Section 292(b), and this

court is disinclined to create precedent in this area.

Now, as to the defendant's second 12(b)(6) motion,

or aspect of its 12(b)(6) motion, the defendant argues that

it must mark its method and systems patents or, pursuant to

35 U.S.C., Section 287 and federal circuit case law, it will

lose the ability to sue for patent infringement.

Plaintiff argues that 287 applies only to patented

products, not unpatented products, such as the defendant's

saline solution.

The Court believes that this issue would benefit

from discovery and further argument.  Thus, the Court will

deny defendant's 12(b)(6) motion at this time and will hear

additional argument at the summary judgment stage.

In conclusion, for the reasons stated in open

court, defendant's motion to dismiss pursuant to Rules

12(b)(1), 12(b)(3), 12(b)(6) and 12(b)(7) is denied,

although the Court will re-entertain under a summary

1   judgment analysis the issue as to whether 35 U.S.C., Section

2   287 precludes this action.  The Court will rule on that, of

3   course, after discovery.

4            It is so ordered.

5            Any questions as to the Court's ruling?

6            Let me say that with the Court's ruling today

7   under Rule 12(a)(4)(A), the defendants have ten days,

8   excluding holidays and weekends, to file their answer.

9   Based on our rough calculation, that's Tuesday, June 9th.

10           Mr. Baker, do you agree?  Do you have a calendar

11  in front of you?  Mr. Moore?  Does anyone have a calendar?

12  Is that acceptable?  Do you need additional time?  I'll ask

13  the plaintiffs if they oppose.

14           MR. BAKER:  Your Honor, I would ask, if ten days

15  is the rule, to get an additional four days because of the

16  intervening days -- ask for an additional 14 days,

17  effectively additional at least seven days.  So a total of

18  21 days is what I'm asking for, Your Honor.

19           THE COURT:  You're asking for the 16th?

20           MR. BAKER:  Three weeks from today, Your Honor,

21  whatever that would be.

22           THE COURT:  What is that?  June 12th?  You want

23  more than June 12th?  Are you going 21 days excluding

24  holidays and weekends?

25           MR. BAKER:  Just 21 days.

1      THE COURT:  Just straight 21 days.  June 12th.  Is
2  that all right, June 12th?
3      MR. CIPRIANI:  We have no objection, Your Honor.
4  Holiday weekend.
5      THE COURT:  That's fine with the Court.
6      Now, can I -- without confusing the issue, can I
7  answer any questions about this order?  And if I think the
8  order is straightforward, I'm not going to.  But if there's
9  any confusion as to this order, I'll try to answer it now.
10      MR. CIPRIANI:  One area, and I don't know if you
11  need answering now, but based on your ruling that *Morrison*
12  applies, I'm assuming then that the government stays in the
13  case to approve or disapprove any settlement prior to a
14  final judgment at trial?  Is that the meaning of that?  Or
15  is that something that the Court will get us advice on at
16  some point later?
17      THE COURT:  *Morrison* applies, yes.  I'm not going
18  to tell you what the government is required to do or not do
19  at this point because I think we'll have to see what the
20  government does.
21      MR. CIPRIANI:  Yes, Your Honor.
22      THE COURT:  I said I was going to tell you, but I
23  wasn't going to tell you the answer.
24      Any other questions which I can choose not to
25  answer?

1      MR. BAKER:  I don't think so, Your Honor.

2      THE COURT:  All right.  That ruling is the only

3 ruling you'll get from the Court other than one paragraph

4 typed up that should be out by 5:00 today that basically

5 states the last three sentences I said -- or two sentences,

6 that 12(b)(1), 12(b)(3), 12(b)(6), 12(b)(7) are denied

7 except that one aspect of 12(b)(6) is deferred in the form

8 of a summary judgment motion after discovery on 287.

9      MR. BAKER:  Your Honor, if I could ask this

10 question?

11      THE COURT:  Hold on one second.

12      This doesn't happen often -- because we have Speed

13 Street this week, the clerk's office is already closed,

14 and -- otherwise it just adds to the traffic issues if we

15 don't let the clerks go home early.  Therefore, you will not

16 have the written order.  You have a minute entry that will

17 just say "for the reasons stated in open court."  And with

18 that you will have to rely on the oral order.

19      So you will have to ask the court reporter to

20 transcribe -- I'm sure you were intending to anyway -- to

21 transcribe that order because that is the order of the

22 Court.

23      Now, you have another question.

24      MR. BAKER:  Yes, Your Honor.

25      We might have -- we haven't looked at this yet --

1    we might well have a basis upon which to move for summary

2    judgment before the close of discovery; in fact, before any

3    discovery.  I just haven't thought through that.

4              THE COURT:  12(c) motion.  That's in the pleading.

5              MR. BAKER:  Rule 56 motion.  If we have a

6    good-faith basis upon which to make a motion for summary

7    judgment before the close of discovery, I'd like to be able

8    to do so.

9              THE COURT:  That's fine.  My standing order looks

10   at 12(b)(6), 12(c) and 56 as one continuous motion, and it

11   depends on how much has occurred that determines how much

12   record the Court has.  So, you know, 12(b)(6), just the

13   complaint; 12(c), the complaint and answer; and Rule 56 I

14   get some or all discovery.

15             So, yes, you can file whatever you want.  However,

16   because I look at 12(b)(6), 12(c), and 56 as one continuum,

17   I rule on them when I want to.  So don't expect to have

18   another round of arguments except for the Rule 56 stage.

19             MR. BAKER:  Absolutely.

20             THE COURT:  I will always, at the close of all

21   discovery and final dispositive motions, I will always have

22   oral argument.

23             MR. BAKER:  Thank you, Your Honor.

24             THE COURT:  All right.  Anything else?

25             Well, I really appreciate your patience.  This was

1  really interesting.  And it's been very challenging for me.

2  I'm sure I made mistakes, but I think we got most of it

3  right.  I'm sure someone else will tell me at a later time

4  what I got wrong.  But we have spent a lot of time on this.

5  We have been very serious about this, and I really

6  appreciate the excellent briefs and the excellent argument.

7  So thank you.

8            (Hearing concluded at 1:45 p.m.)

9                    - - - - -

10

**UNITED STATES DISTRICT COURT**
11  **WESTERN DISTRICT OF NORTH CAROLINA**

12

13

14            **CERTIFICATE OF REPORTER**

15       I, JOY KELLY, RPR, CRR, certify that the foregoing

16  is a correct transcript from the record of proceedings in

17  the above-entitled matter.

18

19

20

21  S/JOY KELLY

22  **JOY KELLY, RPR, CRR**                    **Date** _____
    **U.S. Official Court Reporter**
23  **Charlotte, North Carolina**

24

25